Jerry D. Goldstein, Esq. (ct17834)
JERRY D. GOLDSTEIN, L.L.C.
264 Union Boulevard
Totowa, NJ 07512
973-595-5727
973-595-5522 Fax

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| N. JAMES VALENTINE ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 303-CV-0153 (DJS) |
| vs. ) | |
| ) | |
| ) | |
| NATIONAL SPORTS SERVICES; ) | **PLAINTIFF'S SECOND AMENDED** |
| SMASHMOUTH SPORTS; SCOTT ) | **COMPLAINT AND JURY DEMAND** |
| SPREITZER; JIM FEIST SPORTS; JIM ) | |
| FEIST; JOHN DOES 1-2 and XYZ ) | |
| CORPORATIONS 1-5 (such names being ) | |
| fictitious) ) | |
| Defendants. ) | |
| ) | |

Plaintiff, N. James Valentine, through his attorney, Jerry D. Goldstein, Esq., 264 Union Boulevard, Totowa, NJ 07512, by way of complaint against the Defendants state:

## INTRODUCTION

1. This is an action under Connecticut common law and statutory law for damages arising out of misrepresentations, lies and breaches of contract by the Defendants who systematically solicited Plaintiff's gambling business, and encouraged Plaintiff's trust and reliance, with no intention of living up to the promises they had made.

## THE PARTIES

2. Plaintiff is a citizen of the State of Connecticut.

3. On information and belief, defendant Jim Feist is the President, Secretary and Treasurer of Defendants National Sports Services, Inc., and the Chairman of its board of directors.

4. On information and belief, defendant Jim Feist is a citizen of the State of Nevada.

5. On information and belief, defendant Scott Speitzer is a managing agent or owner of , or is doing business as, Smash Mouth Sports, and is a citizen of the State of Nevada. Scott Speitzer and Jim Feist are referred to collectively herein as the "Individual Defendants".

6. On information and belief, defendant National Sports Services, Inc. is a corporation incorporated under the laws of the State of Nevada, having its principal place of business in Nevada, specifically at 3110 Polaris Avenue, Las Vegas, Nevada 89102.

7. On information and belief, Defendant Jim Feist Sports is incorporated under the laws of the State of Nevada and has its principal place of business in Nevada, specifically at 3110 Polaris Avenue, Las Vegas, Nevada 89102.

8. On information and belief, Defendant Smashmouth Sports is a corporation incorporated under the laws of the State of Nevada and has its principal place of business in Nevada, specifically at 3110 Polaris Avenue, Las Vegas, Nevada 89102.

9. Defendants National Sports Services, Jim Feist Sports and Smashmouth Sports are collectively referred to herein as the "Corporate Defendants."

## JURISDICTION

10. This Court has original jurisdiction over this matter under 28 U.S.C. Sec. 1332 because there is complete diversity between the parties and because the amount in controversy exceeds $75,000.

11. This Court has personal jurisdiction over the Individual Defendants under C.G.S. Sec. 52-59(b).

12. This Court has personal jurisdiction over the Corporate Defendants under C.G.S. Sec. 33-929.

13. Venue in this Court is proper under 28 U.S.C. Sec. 1391 because Defendants are subject to personal jurisdiction in this venue. In addition, a substantial part of the events giving rise to these claims occurred in this venue.

## FACTUAL BACKGROUND

14. The Defendants sell sports gambling services, including predicting and handicapping the outcome of sports events.

15. Each of the Defendants, individually and together, advertise their services in numerous nationally distributed periodicals, such as ProFootball Weekly. These periodicals are sold to Connecticut residents and are mailed to subscribers in the State of Connecticut. These advertisements are intended to increase the sales of each and all of the Defendants.

16. These advertisements sometimes include toll free telephone numbers to give customers (gamblers) around the country, including in Connecticut, access to Defendants' services.

17. These Defendants also maintain various web sites, such as www.JimFeist.com that also give direct access to Defendants' services to customers internationally, including in Connecticut. Customers are invited to purchase Individual and Corporate Defendants' services on the web site itself. Customers are invited to "click [on the web site] to win."

18. These advertisements are for the services of all of the Defendants together. For example, the JimFeist.com web site contains a direct link to Smash Mouth/Scott Spreitzer. For another example, a search on the internet for "Jim Feist" brings up the web site of Defendants National Sports Services, Inc.

19. On information and belief, Defendants also advertise on television stations in Connecticut.

20. Defendants' advertisements claim that if the gambler purchases the services of the Individual and/or Corporate Defendants, the gambler is guaranteed betting success. In addition, guarantees of gambling and betting success are made over the telephone to customers who call the advertised toll free number.

21. The advertisements, solicitations and offers are not specific as to which of the Individual and/or Corporate Defendants' services are being offered. On information and belief, this obfuscation is deliberate.

22. The Individual Defendants (among others) are touted in these ads as the "most successful" and "world champion" handicappers who are "expert" in predicting winners.

23. In September 2000, in Connecticut, Plaintiff saw an advertisement in ProFootball Weekly. This advertisement claimed to provide "free football picks." Plaintiff

called the toll free number on the advertisement and was given a football pick for free. The advertisement did not state who, i.e., what company or individual, was providing the betting tip.

24. After making this phone call, Plaintiff began receiving phone calls at his home in Connecticut from Defendant Scott Spreitzer or a representative of Defendant Scott Spreitzer. During these phone calls, Plaintiff was induced to pay money for additional betting picks on College football games.

25. Plaintiff did purchase tips from, he thought, Scott Spreitzer, beginning on September 24, 2000. However, when Plaintiff received the bill on which he placed this and subsequent charges, it (and all subsequent payments) appeared as a payments due to National Sports Services. In addition, on at least one occasion when Plaintiff received a follow up call from one of his tip-purchases, he was told the purchase was from "Jim Feist Sports."

26. On September 24, 2000, on Plaintiff's first purchase from Defendants, Defendants advised plaintiff to set up an account, and place his bets, through an off shore gambling company. Defendants provided Plaintiff with a toll free number for such a company. Defendants told Plaintiff to set up this account so his betting would not be limited by the gambling laws of the United States or any particular state.

27. From September 24 throughout October and November, Defendants telephoned Plaintiff at his home in Connecticut, urging Plaintiff to "upgrade" his "tip level." Defendants stated that the higher the level, the better the tips. In fact, the higher the level, the more expensive the tips. These unsolicited phone calls made to Plaintiff by Defendants were to sell increasingly expensive services to Plaintiff.

28. To purchase the next level of tips, Plaintiff simply gave his credit card number to the Defendant who called him. The charge would appear on his next credit card bill for services purchased from National Sports Services, Inc.

29. When Plaintiff had gotten to the highest tip level for College football tips, he received a telephone call (again, unsolicited and again, at his Connecticut residence) from someone claiming to be or represent Jim Feist. Jim Feist sold tips for Professional football that were even more expensive than those he had purchased for college football.

30. Plaintiff purchased the tips offered during this and subsequent telephone conversations, this time from Jim Feist, for pro football. He was advised to place his bets through the same off shore gambling company, and again the charges appeared on his credit card as National Sports Services.

31. At every phone call, Plaintiff was told the tips were "guaranteed" winners; that they were "money in the bag." Plaintiff was told the picks were so good, he would be clamoring to buy baseball tips from Defendants the following Spring.

32. From September 24 2000 through December 2000, Plaintiff incurred over $100,000 in charges to various credit cards for purchase tips from Defendants and continued to place bets through the off shore gambling company recommended by Defendants. Whomever Plaintiff thought he was dealing with, the charges all appeared as National Sports Services, Inc.

## COUNT ONE
## CONNECTICUT UNFAIR TRADE PRACTICES ACT

33. Plaintiff repeats as if fully restated herein the contents of the previous paragraphs.

34. Defendants' print advertising, website and telephone lines induced Plaintiff and other gamblers to buy more and more gambling tips, for more and more money, and to place bets based on these tips.

35. The language used in Defendants' advertisements and web sites as well as in Defendants' telephone solicitations, intentionally creates the impression that Defendants actually know who the winner of certain sporting events will be – that they have knowledge that Plaintiff and other gamblers do not have.

36. The Defendants' advertisements and web sites informed Plaintiff and other gamblers that they will win if they bet based upon the services they can buy from Defendants.'

37. These advertisements and web sites offend public policy for gambling to be conducted in a reasonable and responsible manner.

38. Defendants unethically prey on gamblers, including Plaintiff, by claiming to provide the winning information.

39. Plaintiff spent over $100,000 on Defendants' services and also placed numerous bets that he lost based upon Defendants' advice.

40. Defendants' conduct is in violation of the Connecticut Unfair Trade Practices Act, C.G.S. Sec. 42-110 (a-q).

> WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for actual and punitive damages, plus costs and reasonable attorneys fees in an amount to be determined at trial.

## COUNT TWO
## FRAUDULENT MISREPRESENTATION

41. Plaintiff repeats as if fully restated herein the contents of the previous paragraphs.

42. Defendants' statements in their advertising and unsolicited telephone calls to Plaintiff, falsely represent that the information Plaintiff purchased would lead to Plaintiff winning bets placed on sporting events. Defendants also falsely told Plaintiff that the more he paid Defendants for their "expert" and "world champion" information, the better his chances of winning were.

43. Defendants knew that even if Plaintiff purchased their services and placed bets based on Defendants' advice, that would not lead to a winning bet. Defendants further knew that the likelihood of Plaintiff's betting success would not depend on the cost of the tips he purchased.

44. Defendants made these misrepresentations to induce Plaintiff to buy their services.

45. Plaintiff purchased the services offered by Defendants, expecting that the advice would lead to winning bets and that the more he paid Defendants the more he would win. But the advice did not lead to winning bets, and Plaintiff lost considerable money because of the Defendants' misrepresentations both to Defendants and also on the bets he placed in reliance on Defendants' misrepresentations.

46. Defendants conduct constitutes fraudulent misrepresentation under Connecticut common law.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for actual and punitive damages, plus costs and reasonable attorneys fees in an amount to be determined at trial.

## COUNT THREE
## NEGLIGENT MISREPRESENTATION

47. Plaintiff repeats as if fully restated herein the contents of the previous paragraphs.

48. Defendants' statements in their advertising and unsolicited phone calls to Plaintiff falsely represent that the information Plaintiff purchased would lead to Plaintiff winning bets placed on sporting events.

49. Defendants made these misrepresentations to induce Plaintiff to buy their services.

50. Plaintiff purchased the services offered by Defendants, expecting that the advice would lead to winning bets, and that the more he paid Defendants the more he would win on his bets.  But the advice did not lead to wins, and Plaintiff lost considerable money because of the Defendants' misrepresentations.

51. Defendants conduct constitutes negligent misrepresentation under Connecticut common law.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for actual and punitive damages, plus costs and reasonable attorneys fees in an amount to be determined at trial.

# COUNT FOUR
# BREACH OF CONTRACT

52. Plaintiff repeats as if fully restated herein the contents of the previous paragraphs.

53. Plaintiff entered into one or more oral agreements with Defendants, the terms of which were agreed to in a series of telephone calls initiated by Defendants to Plaintiff's home in Connecticut. Plaintiff negotiated and performed his obligations under the terms of these agreements while in Connecticut. Plaintiff paid Defendants from Connecticut.

54. Defendants were to render their services to Plaintiff in Connecticut.

55. Defendants failed to provide the services agreed to. This failure constitutes a breach of the oral agreement between Plaintiff and Defendants.

> WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for actual damages, plus costs and reasonable attorneys fees in an amount to be determined at trial.

Dated: 9/23/2003

Jerry D. Goldstein (ct17834)
E-Mail: jgoldstein@jdgonline.com

264 Union Boulevard
Totowa, NJ 07512
Tel: 973-595-5727
Fax: 973-595-5522

991 Main Street, Suite 3C
East Hartford, CT 06108