UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| N. JAMES VALENTINE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | CIVIL ACTION NO. |
| | : | 3:03CV153 (DJS) |
| NATIONAL SPORTS SERVICES, | : | |
| SMASH MOUTH SPORTS, SCOTT | : | |
| SPREITZER, JIM FEIST SPORTS, JIM | : | |
| FEIST, JOHN DOES 1-5 and XYZ | : | |
| CORPORATIONS 1-5 (such names | : | |
| being fictitious), | : | |
| | : | |
| Defendants. | : | JULY 6, 2004 |

### DECLARATION OF CHAD A. LANDMON IN SUPPORT
### OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1.      I am an associate in the law firm of Axinn, Veltrop & Harkrider LLP, counsel

herein to defendants National Sports Services, Smash Mouth Sports and Jim Feist Sports (the

"Corporate Defendants") and defendants Scott Spreitzer and Jim Feist (the "Individual

Defendants") (collectively, the Corporate Defendants and Individual Defendants will be referred

to as the "Defendants").

2.      I submit this declaration in support of Defendants' Motion for Summary

Judgment, filed concurrently herewith.

3.      Attached hereto as Exhibit A is a true and correct copy of the following pages

from the transcript of the deposition of plaintiff N. James Valentine ("Valentine"), taken on April

28, 2004 and May 20, 2004: 7-15; 19-21; 27; 30; 33-34; 38-41; 49; 67-69; 74-79; 82-85; 95-102;

122; 131-132; and 140-144.

4.      Attached hereto as Exhibit B is a true and correct copy of Valentine's answers to Interrogatory Nos. 8, 10, 11, 13, 15 and 16, dated March 23, 2004.

5.      Attached hereto as Exhibit C is a true and correct copy of a printout from the Corporate Defendants' website, which can be found at http://www.jimfeist.com/AboutNSS.htm, describing the history and business of the Corporate Defendants.

6.      Attached hereto as Exhibit D is a true and correct copy of an article from the Journal of Economics and Finance regarding the efficiency of the market for gambling on college football, in which the authors rely heavily on 25 years' worth of data from National Sports Services' Jim Feist's Professional Football Workbook.  Rodney J. Paul, et al., "Fair Bets and Profitability in College Football Gambling," J. of Econ. & Fin. (Summer 2003).

7.      Attached hereto as Exhibit E is a true and correct copy of an article from the Fort Pierce Tribune regarding various publications discussing the 2003 college football season, in which National Sport Services' Jim Feist's College Football Annual is prominently discussed. Steve Megargee, "Who's No. 1?," Fort Pierce Tribune, at B1 (July 19, 2003).

8.      Attached hereto as Exhibit F is a true and correct copy of an article from the Southwest Newswire discussing the launch of "Jim Feist's Pro Football Smartline '96," which is a computer software program containing sporting information and handicapping tools.  Jim Feist is identified in this article as a "world champion sports handicapper."  "ParSoft Interactive Announces Unique Sports Handicapping Software for PC Users," Southwest Newswire (August 2, 1996).

9.      Attached hereto as Exhibit G is a true and correct copy of an award issued to Jim

2

Feist by The Sports Monitor, Inc. for finishing in first place in a nationwide handicapping competition relating to the 1991 college bowl games.

10.     Attached hereto as Exhibit H is a true and correct copy of an article from the St. Louis Post-Dispatch regarding college football, in which Jim Feist is quoted.  Mr. Feist is described as "one of the more successful handicappers."  Bob Pastin, "Revenge Factor Big in College Selections," St. Louis Post-Dispatch, at 6C (September 7, 1991).

11.     Attached hereto as Exhibit I is a true and correct copy of an advertisement sponsored by the Corporate Defendants in or around 1988 announcing that Jim Feist was awarded $45,000 in the Stardust Hotel & Casino Handicapping Championship.

12.     Attached hereto as Exhibit J is a true and correct copy of an article from The Washington Post regarding the advent of the sports information services industry, including the formation of National Sports Services.  The articles notes that "[e]ven competitors acknowledge that Feist's operation [National Sports Services] is honest and his handicapping very capable."  Andrew Beyer, "Tipsters on Tangent; Sports Services Put Different Face on Game in Las Vegas; 'Services' Having a Dramatic Impact on Books," The Washington Post, at F1 (November 30, 1980).

13.     Attached hereto as Exhibit K is a true and correct copy of a list of purchases of sports handicapping services from the Corporate Defendants made by Valentine from September 2000 through December 2, 2000, along with a listing of the $5,000 credit issued to Valentine on December 27, 2000.  This document, which is labeled NSS 000053 – NSS 000054, was produced by the Defendants on March 10, 2004.

14.    Attached hereto as Exhibit L is a true and correct copy of a telephone transcript verifying Valentine's purchase of $2,060 for sports handicapping services from Smash Mouth Sports on September 25, 2000. As evident by this transcript, such purchase came with an express guarantee that Valentine was only required to pay a balance due of $2,160 if he was up by $9,720 by November 15, 2000. This document, which is labeled NSS 000010 – NSS 000012, was produced by the Defendants on March 10, 2004.

15.    Attached hereto as Exhibit M is a true and correct copy of a telephone transcript verifying Valentine's purchase of $4,500 for sports handicapping services from Jim Feist Sports on October 21, 2000. As evident by this transcript, such purchase came with an express guarantee that Valentine was only required to pay a balance due of $4,500 if he was up by ten times his investment, or $45,000, by November 30, 2000. This document, which is labeled NSS 000032 – NSS 000033, was produced by the Defendants on March 10, 2004.

16.    Attached hereto as Exhibit N is a true and correct copy of a telephone transcript verifying Valentine's purchase of $10,342 for sports handicapping services from Jim Feist Sports on October 25, 2000. As evident by this transcript, such purchase came with an express guarantee that Valentine was only required to pay a balance due of $18,532 if he was up by $72,185 by January 31, 2001. This document, which is labeled NSS 000038 – NSS 000040, was produced by the Defendants on March 10, 2004.

17.    Attached hereto as Exhibit O is a true and correct copy of a December 12, 2000 letter executed by Valentine in which he agreed to the following:

> I hereby authorize all charges made to Jim Feist Sports prior to December 12, 2000. . . . I agree to take no further action on any charges I may have incurred on [various credit cards] with Jim Feist Sports prior to this date, December 12, 2000.

4

(Emphasis added.)  This document, which is labeled NSS 000002, was produced by the Defendants on March 10, 2004.

18.    Attached hereto as Exhibit P is a true and correct copy of an October 3, 2002 Order dismissing the complaint filed by Valentine in the Superior Court of New Jersey in Valentine v. National Sports Services, Dkt. No. L-2494-02.

19.    Attached hereto as Exhibit Q are true and correct copies of printouts from a sampling of various sports handicapping websites containing representations regarding the quality of their services, including statements that the picks are "guaranteed," that the handicappers are "experts," that the handicappers are the "best handicappers on the net," that the picks are "free," that the picks are "piling up the cash," that customers purchasing picks "have cashed in 9 out [of] 10 days," that customers can get a "huge payday," that the "profit is starting to come easy," that the handicappers have enjoyed "unparalleled success," that picks track "wise guy" betting practices, that membership comes with a "money back guarantee" and that the picks are "extremely profitable."

20.    I declare under penalty of perjury that the foregoing is true and correct.


Dated: July 6, 2004
       Hartford, CT


_____
Chad A. Landmon

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing Declaration of Chad A. Landmon has

been sent via first-class U.S. mail, postage prepaid, this 6th day of July, 2004 to:

Jerry D. Goldstein, Esq.
Jerry D. Goldstein, L.L.C.
264 Union Boulevard
Totowa, NJ 07512


_____
Chad A. Landmon