LEXSEE 1992 CONN SUPER LEXIS 2762

ZOOLOGICAL AND ECOLOGICAL RESEARCH FOUNDATION, INC. v. CRABTREE-HAAS IMPORTS, INC.

CV87 0238016 S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF FAIRFIELD, AT BRIDGEPORT

*1992 Conn. Super. LEXIS 2762*

September 16, 1992, Decided
September 16, 1992, Filed

NOTICE: [*1]

THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**LexisNexis(R) Headnotes**

**JUDGES:** KATZ

**OPINIONBY:** JOETTE KATZ

**OPINION:**

MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE (NO. 108)

The legal sufficiency of a complaint may be challenged by a motion to strike. Connecticut Practice Book § 152; *Mingachos v. CBS, Inc.*, 196 Conn. 91, 108-109 (1985). "For the purpose of ruling upon a motion to strike, the facts alleged in a complaint, though not the legal conclusions it may contain, are deemed to be admitted." *Maloney v. Conroy*, 208 Conn. 392, 394 (1988). Thus, "in determining whether a motion to strike should be granted, the sole question is whether, if the facts alleged are taken to be true, the allegations provide a cause of action or a defense." *County Federal Savings and Loan Assn. v. Eastern Associates*, 3 Conn. App. 582, 585-86 (1985). The facts must be construed in the light most favorable to the nonmoving party. *Rowe v. Godou*, 209 Conn. 273, 278 (1988).

In the case at hand, the defendant [*2] had moved to strike both counts of the complaint which charges it with a CUTPA violation in common law fraud. This court will address the motion as addressed to the fraudulent misrepresentation claim (Count II) first and the pleadings will be referenced as necessary.

In order to bring a cause of action for fraud, deceit or misrepresentation, the party claiming to have been a victim of same must prove

"That a false representation was made as a statement of fact; that it was untrue and was known to be untrue by the party making it; that it was made to induce the other party to act on it; and that he did so to his injury." *Paiva v. Vanech Heights Construction Co.*, 159 Conn. 512, 515 (1970). See also *Web Press Services Corp. v. New London Motors, Inc.*, 203 Conn. 342, 362 (1987); *Bailey Employment Systems, Inc. v. Hahn*, 545 F. Supp. 62, 66-67 (D. Conn. 1982), aff'd. 723 F.2d 895 (2d Cir. 1983).

Although the allegations as contained in paragraphs 2-6 n1 satisfy the first three requirements, no allegation has been made that would satisfy the fourth. [*3]

n1 COUNT TWO 2. On or about September 25, 1986 the Defendant falsely and fraudulently, and with intent to defraud the public generally and the Plaintiff in particular, ran an advertisement in the Easton Courier. . . .

3. In reliance upon the advertisement referred to in paragraph 2 hereof, the Plaintiff, acting herein by its President, Heinz Neunteufel, telephoned James Spataro, salesman for the Defendant and was quoted a sales price by Mr. Spataro of approximately $ 6,000.00 for a red Mitsubishi Mirage Hatchback (Mirage) and was told the minimum trade-in for the Plaintiff/Foundation's car would be $ 1,500.00.

4-6. Paragraphs 4-6 of Count One are hereby made paragraph 4-6 of Count Two.

COUNT ONE 4. On or about September 26, 1986 Mr. Neunteufel went to the Defendant's place of business and spoke with another salesman and was shown the Mirage, Vehicle I.D. #JA3BA24KHC000467 and was verbally offered a sales price of $ 6,380.00.

5. Mr. Neunteufel verbally agreed to buy the Mirage for $ 6,380.00 and indicated he had driven in the Foundation's automobile for trade-in.

6. The Defendant, through its salesman, then indicated the Defendant would not sell the Mirage to the Foundation for $ 6,380.00 but would sell it to the Foundation for $ 8,075.00 from which price the trade-in of $ 1,500.00 would be deducted."

[*4]
The plaintiff did not act to his detriment based upon the defendant's misrepresentation. He purchased the same vehicle from another dealership and paid more than he would have paid had the defendant honored its advertisement and original sales price of $ 6,380.00. Were this an action for breach of contract, n2 the plaintiff could point to the difference in price as an element of damage. In the case as pled, nothing has been alleged that even suggests that the defendant's representations became the basis of the plaintiff's conduct. Cf., *Miller v. Appleby*, 183 Conn. 51, 57 (1981); *Maturo v. Gerard*, 196 Conn. 584, 588 (1985); *Aksomitas v. Aksomitas*, 205 Conn. 93, 96 (1987); and Sylvan Construction Co. v. BJP Const., Inc., et al, 3 Conn. L. Rpt. 709 (1991) (Axelrod, J.). Therefore, the motion as it relates to count II is granted.

n2 The court is not faced with and thus takes no position on whether a valid cause of action for breach of contract exists; reference was made to illustrate the shortcomings of the cause of action that is before the court.

[*5]
Turning to the first count of the complaint: it is well settled that in determining whether a practice violates CUTPA the court has "adopted the criteria set out in the 'cigarette rule' by the federal trade commission for determining when a practice is unfair: '(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise -- whether, in other words, it is within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].' *Conaway v. Prestia*, [191 Conn. 484, 492-93, 464 A.2d 847 (1983)], quoting *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244-45 n.5, 92 S.Ct. 898, 31 L. Ed. 2d 170 (1972) [Sperry]. . . ." *McLaughlin Ford, Inc. v. Ford Motor Co.*, 192 Conn. 558, 567-68, 473 A.2d 1185 (1984).

"A practice may be unfair because [*6] of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed. Reg. 59,614, [and] 59,635 (1978)." (Internal quotation marks omitted.) Id., 569 n.15. *Atlantic Richfield Co. v. Canaan Oil Co.*, 202 Conn. 234, 242 (1987). "Thus a violation of CUTPA may be established by showing either an actual deceptive practice; see, e.g., *Sprayfoam, Inc. v. Durant's Rental Centers, Inc.*, 39 Conn. Sup. 78, 468 A.2d 951 (1983); or a practice amounting to a violation of public policy. See, e.g., *Sportsmen's Boating Corporation v. Hensley*, [192 Conn. 747, 474 A.2d 780 (1984)]." *Web Press Services Corporation v. New London Motors, Inc.*, 203 Conn. 342, 355, 525 A.2d 57 (1987). A CUTPA plaintiff need not prove an intent to deceive to prevail under CUTPA (knowledge of falsity, either constructive or actual need not be proven to establish [*7] CUTPA violation). *Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 106 (1992).

For a representation to be unlawfully deceptive, it is not necessary that the seller intended to deceive. *Bailey Employment System, Inc. v. Hahn*, [545 F.Sup. 62, 67 (D. Conn. 1982), aff'd., 723 F.2d 895 (2d Cir. 1983)]; see also *Porter & Dietsch, Inc. v. F.T.C.*, 605 F.2d 294, 308-309 (7th Cir. 1979). However, the trade practice must have a tendency and capacity to deceive and the consumer must be deceived in his initial contact with the challenged practice. *Hinchliffe v. American Motors Corp.*, 39 Conn. Sup. 107, 120 (1982), aff'd. 192 Conn. 252 (1983) (citations omitted). And, finally, the CUTPA plaintiff need not prove reliance or that the

representation became part of the basis of the bargain, but he is required to prove that he sustained "an ascertainable loss." *Hinchliffe v. American Motors Corp., 184 Conn. 607, 617 (1981).*

The defendant herein contends that the plaintiff herein [*8] has failed to allege the requisite elements. It also claims that ascertainable loss has not been alleged. And, finally, the count should be stricken because no goods were purchased in reliance, even in part, based upon the misrepresentation. (See defendant's brief in support of motion to strike at pp. 2, 3.)

Whether the allegations as set forth below rise to the level of a deceptive practice (see *Caldors, Inc. v. Heslin, 215 Conn. 590, 597 (1990)* treating "deception" in lieu of "unfairness") has been answered by *General Statutes § 42-110b-28(7)* which states:

> (7) It shall be an unfair or deceptive act or practice for a new car dealer or used car dealer to advertise in any manner the price which will be paid by such dealer for trade-in vehicles unless the price of the vehicle sold by such dealer to the owner of the trade-in vehicle is within the range of prices at which the dealer usually sells such vehicles and is not increased because of the amount paid for the trade-in vehicle. (Emphasis added.)

No challenge has been raised to the authority of the Department of Consumer Protection regarding its right to establish this practice [*9] as unfair or deceptive in violation of CUTPA. *Caldor, Inc. v. Heslin, supra, at 599.* Additionally, the plaintiff as alleged sufficient facts to support the requirements that the advertisement and representations by Mr. Spatero, among others, did have a tendency to deceive, and further, that he was indeed deceived.

What remains are the defendant's arguments that the plaintiff failed to allege: (1) ascertainable loss; and, (2) that the goods were purchased in reliance on the defendant's conduct. Although the arguments are made separately, they raise one common foundation question: must the plaintiff allege that it purchased an item at least partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained? This is how the court defined "ascertainable loss" in *Hinchliffe v. American Motors Corp., 184 Conn. 607, 614-615 (1981)* (emphasis added).

The purpose behind this "threshold loss" requirement in a consumer protection statute "is to guard against vicarious suits by self-constituted attorneys general when they spot an apparently deceptive advertisement [*10] in the newspaper, on television or in a store window. Rice, 'A New Private Remedies for Consumers: The Amendment of Chapter 93A,' *54 Mass. L. Q. 307, 314 (1969).*" Id. at 615 n.6. But the court determined that to require actual loss would only serve to eviscerate the private remedy afforded by CUTPA. Id. at 615-616.

As stated above, the common law action for misrepresentation or deceit requires proof that (1) the defendant made a false representation of fact, (2) the defendant knew the representation to be false at the time it was made, (3) the representation was made to induce reliance by the plaintiff, and (4) the plaintiff relied upon the misrepresentation. In an action under CUTPA based on the claim that an act was "deceptive," the plaintiff need not prove the second, third, or fourth element of the common law action. Web Press Services Corp. v. New London Motors, Inc. (Web Press I), supra at 362, 363; Web Press Services Corp. v. New London Motors, Inc. Web Press II), *205 Conn. 479, 483-84 (1987).* This fourth element contains both the meaning that the plaintiff acted and that the action was motivated by [*11] the misrepresentation. While FTC policy does not require that there be a completed transaction to establish a violation, for there to be an ascertainable loss to a particular plaintiff who has standing, there should be proof of action within a context where a misrepresentation occurred. See Morgan, "CUTPA: Determining Standards of Conduct, 62 CBJ 74, 106 n. 176 (1988)." Ascertainable loss has been defined to embrace "whenever a consumer has received something other than what he bargained for. . . . In one sense the buyer has lost the purchase price of the item because he parted with his money reasonably expecting to receive a particular item or service. When the product fails to measure up, the consumer has been injured; he has suffered a loss. In another sense he has lost the benefits of the product which he was led to believe he had purchased." *Hinchcliffe v. American Motors Corp., supra at 614.*

In this case, the plaintiff neither purchased nor received anything from the defendant as opposed to the plaintiffs in *Conway v. Prestier, 191 Conn. 484 (1983),* who showed an ascertainable if not actual loss [*12] by rent changing hands between the plaintiff and defendant. In Hinchliffe the plaintiff showed an ascertainable loss by paying money to the defendant and receiving something other than what the defendant represented it to be. In each case the ascertainable or actual loss was suffered at the hands of the defendant. In the instant case the plaintiff in Paragraph 7 of Count I would ask it be compensated for its having bargained with an independent third party. This does not qualify as a

1992 Conn. Super. LEXIS 2762, *

CUTPA violation for which the plaintiff can seek redress. n3 Therefore, the motion to strike count I is also granted.

> n3 Although the court hereby grants the defendant's motion to strike, in no way should the defendant's conduct go unnoticed. The decision herein does not mean that a dealership can misrepresent to the public with impunity.

CUTPA gives the Commissioner of Consumer Protection tremendous powers to prevent such deception without any requirement of establishing ascertainable loss. See *Connecticut General Statutes § § 42-110b(c)*, 42-110f, and 42-110j through p.

[*13]

JOETTE KATZ, JUDGE