UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| N. JAMES VALENTINE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | CIVIL ACTION NO. |
| | : | 3:03CV153 (DJS) |
| NATIONAL SPORTS SERVICES, | : | |
| SMASH MOUTH SPORTS, SCOTT | : | |
| SPREITZER, JIM FEIST SPORTS, JIM | : | |
| FEIST, JOHN DOES 1-5 AND XYZ | : | |
| CORPORATIONS 1-5 (such names | : | |
| being fictitious), | : | SEPTEMBER 3, 2004 |
| | : | |
| Defendants. | : | |

DEFENDANTS' REPLY BRIEF IN FURTHER
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 1

ARGUMENT...................................................................................................... 1

    I.     No Material Facts are in Dispute............................................................ 1

    II.    The Unambiguous Language of the
            Covenant Not To Sue Bars Valentine's Claims....................................... 3

    III.   The Alleged Second Settlement Agreement is a Classic Red Herring.................. 3

    IV.   The Alleged Statements by the Corporate
            Defendants Constitute No More than Puffery........................................... 5

    V.    The Evidence Does Not Support a CUTPA Claim.................................... 8

CONCLUSION................................................................................................... 10

i

## TABLE OF AUTHORITIES

Amnesty Am. v. West Hartford,
    288 F.3d 467 (2d Cir. 2002)...................................................................... 1

Beal v. Lindsay,
    468 F.2d 287 (2d Cir. 1972)...................................................................... 2

Coca-Cola Co. v. Tropicana Prods., Inc.,
    690 F.2d 312 (2d Cir. 1982)...................................................................... 9

Coger v. Connecticut,
    309 F. Supp. 2d 274 (D. Conn. 2004)....................................................... 2

Cohen v. Koenig,
    25 F.3d 1168 (2d Cir. 1994)...................................................................... 7

Darvin v. Bache Halsey Stuart Shields, Inc.,
    479 F. Supp. 460 (S.D.N.Y. 1979)........................................................... 6

Elkind v. Liggett & Meyers,
    635 F.2d 156 (2d Cir. 1980)...................................................................... 7

Exposition Press, Inc. v. FTC,
    295 F.2d 869 (2d Cir. 1961)...................................................................... 9

Goldman v. Beldon,
    754 F.2d 1059 (2d. Cir. 1985).................................................................. 7

Hanton v. Mathiau,
    2000 U.S. Dist. LEXIS 21857,
    Dkt. No. 98CV1388 (HBF) (D. Conn. Sept. 19, 2000)............................. 4

Lisella v. Ford Motor Co.,
    1999 U.S. Dist. LEXIS 23321,
    Dkt. No. 3:97CV2001 (DJS) (D. Conn. Oct. 26, 1999)............................ 2

Murphy v. McNamara,
    416 A.2d 170 (Conn. Super. Ct. 1979)..................................................... 9

Newman v. Rothschild,
    651 F. Supp. 160 (S.D.N.Y.).................................................................... 6

Paiva v. Vanech Heights Constr. Co.,
    159 Conn. 512 (Conn. 1970)..................................................................... 6

<u>Pierce v. F.R. Tripler & Co.</u>,
    955 F.2d 820 (2d Cir. 1992)............................................................... 3

<u>Richards v. New York Dep't of Correctional Servs.</u>,
    700 F.Supp. 2 (S.D.N.Y. 1988)......................................................... 2

<u>Roberts v. Judicial Dep't</u>,
    2001 U.S. Dist. LEXIS 14354,
    Dkt. No. 99CV14 (RNC) (D. Conn. March 28, 2001)...................... 4

<u>Rotstein v. Reynolds & Co.</u>,
    359 F. Supp. 109 (N.D. Ill. 1973)..................................................... 6

<u>Sable v. Southmark/Envicon Capital Corp.</u>,
    819 F. Supp. 324 (S.D.N.Y. 1993)..................................................... 7

<u>Tyson v. Willauer</u>,
    289 F. Supp. 2d 190 (D. Conn. 2003)................................................ 2

<u>Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.</u>,
    373 F.3d 241 (2d Cir. 2004).............................................................. 2

<u>Web Press Services Corp. v. New London Motors, Inc.</u>,
    203 Conn. 342 (Conn. 1987)............................................................. 8

<u>Zerman v. Ball</u>,
    735 F.2d 15 (2d Cir. 1984)................................................................ 5

INTRODUCTION

In his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (the "Opposition" or "Opp."), Plaintiff N. James Valentine ("Valentine") piles on layer after layer of misdirection, conjecture and hyperbole, even attempting to amend his Complaint yet again with new claims. What he fails to do is point to any evidence or legal theory that would support his claims. The Corporate Defendants (National Sports Services, Smash Mouth Sports and Jim Feist Sports) and the Individual Defendants (Scott Spreitzer and Jim Feist) respectfully submit this reply brief in further support of their Motion for Summary Judgment. There are no material facts in dispute, and, as more fully set forth in Defendants' Memorandum of Law ("Def. Mem."), summary judgment is warranted.

ARGUMENT

I.    No Material Facts are in Dispute

When considering a motion for summary judgment, the district court is not obligated "to perform an independent review of the record to find proof of a factual dispute." Amnesty Am. v. West Hartford, 288 F.3d 467, 470 (2d Cir. 2002). Instead, Local Rule 56(a) places the burden upon the parties to direct the court to the relevant factual issues by (1) requiring the moving party to submit a Local Rule 56(a)(1) Statement setting forth the material facts as to which there is no genuine issue to be tried and (2) requiring the opposing party to submit a Local Rule 56(a)(2) Statement admitting or denying the facts set forth in the movant's Statement and separately listing each disputed issue of material fact. In addition, Local Rule 56(a)(3) requires the parties to cite specific admissible evidence, including "affidavits, deposition testimony, [and] responses to discovery requests" to support their factual contentions.

As this Court has recognized, "[t]he purpose of [Local] Rule 56 is to aid the court, by directing it to the material facts that the movant claims are undisputed and that the party opposing the motion claims are disputed." Coger v. Connecticut, 309 F. Supp. 2d 274, 277 (D. Conn. 2004) (noting that, "[w]ithout such statement, the court is left to dig through a voluminous record, searching for material issues of fact without the aid of the parties") (internal quotation marks and citation omitted). Accordingly, following the requirements of Local Rule 56(a)(1), "this Court has repeatedly held that the opposing party's failure to submit a timely Local Rule 56(a)(2) Statement will result in the Court's deeming admitted all facts set forth in the moving party's Local Rule 56(a)(1) Statement." Tyson v. Willauer, 289 F. Supp. 2d 190, 194 (D. Conn. 2003); see also Lisella v. Ford Motor Co., 1999 U.S. Dist. LEXIS 23321, at *2, n.2, Dkt. No. 3:97CV2001 (DJS) (D. Conn. Oct. 26, 1999) (attached hereto as Exhibit A).[1]

In his Opposition, Valentine asserts that Defendants' Summary Judgment Motion should be denied because a "genuine dispute of material facts exists." (Opp. at 15-16.) In support of this argument, Valentine relies on numerous statements of conjecture, mostly derived from allegations in his Amended Complaint, failing to cite to any admissible evidence,[2] or, frequently, any evidence of any kind. Such tactics are entirely improper at the summary judgment stage. Richards v. New York Dep't of Correctional Servs., 700 F. Supp. 2, 4 (S.D.N.Y. 1988) (citing Beal v. Lindsay, 468 F.2d 287, 291 (2d Cir. 1972)). Even more glaring, however, Valentine

---

[1] Of course, this Court should still "assess whether the [Defendants] ha[ve] fulfilled [their] burden of demonstrating that there is no genuine issue of material fact and [their] entitlement to judgment as a matter of law." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

[2] For example, Valentine cites numerous statements made in documents that were allegedly obtained (1) from one of the Defendant's websites, (2) from an issue of Pro Football Weekly and (3) from one of the Defendant's publications. (Opp. Exs. A-C.) However, nowhere does Valentine point to admissible evidence demonstrating that he relied upon any of these statements in making his purchases or whether he even saw any of these statements at any time prior to this lawsuit. In point of fact, the print out from the website (Opp. Ex. A) appears to be from September 2003, and the issue of Pro Football Weekly (Opp. Ex. B) appears to be from January 2001, after Valentine ceased purchasing services from the Corporate Defendants. (Local Rule 56(a)(1) Statement ¶ 11.)

failed to file a Local Rule 56(a)(2) Statement.  Thus, all of the facts in Defendants' Local Rule

56(a)(1) Statement are deemed admitted, and, for the reasons explained in Defendants'

Memorandum of Law, Defendants are entitled to judgment as a matter of law.

II.      The Unambiguous Language of the Covenant Not To Sue Bars Valentine's Claims

      Citing inadmissible extrinsic evidence, Valentine argues that the December 12, 2000

covenant not to sue should be disregarded.  (Opp. at 17-19.)  Notably, however, Valentine does

not even attempt to argue that the plain meaning of the covenant – that Valentine shall "take no

further action" relating to his purchases – is ambiguous.  As such, Valentine's extrinsic evidence

regarding correspondence between the parties and Valentine's own after-the-fact deposition

testimony is irrelevant, as well as being at odds with Valentine's own testimony.  (See Def.

Mem. at 12-13; Depo. Tr. at 101-02; see also Landmon Dec. Ex. B, Plaintiff's Answer to

Interrogatory No. 16.)

      Valentine further argues that the covenant should not be given its ordinary meaning based

upon correspondence exchanged in an attempt to compromise the claims Valentine continued to

assert even after executing the covenant not to sue.  (Opp. at 17-19 and Exs. D-F.)  Such

correspondence, however, is plainly inadmissible under Rule 408 of the Federal Rules of

Evidence.  Pierce v. F.R. Tripler & Co., 955 F.2d 820, 827-28 (2d Cir. 1992).  Therefore, the

covenant not to sue should be enforced by its plain terms.

III.     The Alleged Second Settlement Agreement is a Classic Red Herring

      Valentine claims in his opposition memorandum for the first time in this case that his

breach of contract claim is premised on an alleged second settlement agreement entered into with

the Corporate Defendants at some point in 2001.  (Opp. at 17-19.)  This puzzling contention is no

more than an attempt to distract the Court from the merits of Defendants' motion, and particularly Valentine's covenant not to sue, which should not be countenanced here.

The only breach of contract action alleged in Valentine's Amended Complaint or described in his interrogatory responses concerned the performance of the underlying transactions at issue. While it is perhaps understandable that Valentine has abandoned this meritless claim, his attempt to use his opposition brief to transmogrify his contract claim into an entirely new claim based on a breach of an alleged second settlement agreement cannot be countenanced. Roberts v. Judicial Dep't, 2001 U.S. Dist. LEXIS 14354, at *7, Dkt. No. 99CV14 (RNC) (D. Conn. March 28, 2001) ("a memorandum of law [in opposition to a summary judgment motion] cannot be used to amend the complaint") (citing cases) (attached hereto as Exhibit B); Hanton v. Mathiau, 2000 U.S. Dist. LEXIS 21857, at *17 n.3, Dkt. No. 98CV1388 (HBF) (D. Conn. Sept. 19, 2000) (same) (attached hereto as Exhibit C). Moreover, Valentine never described this alleged agreement in discovery, despite being specifically asked on multiple occasions about any agreements he had made with the Defendants. (Landmon Dec. Ex. B, Plaintiff's Answer to Interrogatory No. 8; Depo. Tr. at 82-83.)

Even if the correspondence upon which Valentine relies were procedurally cognizable or admissible (neither of which is the case) Valentine's argument is fatally flawed because such documents make clear that no agreement was actually reached. In fact, the two letters upon which Valentine relies to establish the terms of the agreement (Opp. Exs. D and E) demonstrate in no uncertain terms that the parties did not, in fact, arrive at an agreement. Notably, both of the letters require a signature by the other party, and neither letter has such a signature. Moreover, all of the letters subsequently sent by Valentine's representative, Demetrios Stratis, indisputably demonstrate that an agreement had not been reached. (Opp. Ex. F.)

4

IV.     The Alleged Statements by the Corporate Defendants Constitute No More than Puffery

Valentine's Opposition is replete with allegations that are unsupported by any admissible

evidence, contradicted by that evidence, or irrelevant, and nowhere is that more true than with

respect to Valentine's misrepresentation claims.  At bottom, the only cognizable "statements"

bearing on the misrepresentation claims are no more than marketing puffery as a matter of law.

Valentine discusses five examples of the Corporate Defendants' supposed

misrepresentations, claiming that the Defendants hold out their services as "[A]bsolutely free"

and state that "[you] will be the one standing in the end," "[i]t's like cash in hand," "Free Parlay"

is "Guaranteed," and "Picks and Analyses, Live Lines & Odds, Up to Date Handicapping Stats!

And More – FREE."  (Opp. at 20.)  In large part, these statements simply have no bearing on

Valentine's misrepresentation claims.  First, neither party disputes that the Corporate Defendants

provided Valentine with a free pick.  (Local Rule 56(a)(1) Statement ¶¶ 7-10.)  Thus, the initial

service was "absolutely free."  Second, Valentine has not claimed that he was denied a "free

parlay," so that alleged representation is irrelevant.  Finally, the testimony cited in support of

Valentine's sweeping statement that "the record demonstrates that [Defendants] 'guaranteed' his

success," (Opp. at 9), is a vague invitation that "If you go to their Internet site, you will see

advertisements such as, 'We had this week's winner guaranteed,' 'it is a lock,' words to that

effect.'" (Depo. Tr. at 45.)  In fact, Valentine acknowledged in his deposition that the only

guarantees of performance actually made by Defendants were fulfilled.  (Def. Mem. at 6-7.)

The statements that Valentine ultimately relies on (e.g., "it's like cash in hand") are

standard puffery as a matter of law.  In Zerman v. Ball, 735 F.2d 15, 20 (2d Cir. 1984), the

Second Circuit provided examples of directly analogous statements considered to be puffery

(e.g., plaintiff "could not lose").[3]  Cases like <u>Newman v. Rothschild</u>, 651 F. Supp. 160, 163 (S.D.N.Y. 1986), emphasize that the "reasonable investor" or, analogously, the "reasonable gambler," standard is to be used to analyze puffery claims.  Such statements as "[you] will be the one standing in the end" and "[i]t's like cash in hand," allegedly made by the Corporate Defendants, similarly would not be interpreted literally by the average reasonable person (or reasonable gambler), and should be deemed puffery.  Valentine has gambled for over 30 years, understands the inherent risks involved, and must be held to the standard of a reasonable person with extensive gambling experience.

Valentine also ignores the scope of the puffery rule, which acknowledges that advertising is granted significant leeway where the reasonable person would recognize that sales statements are not to be taken literally.  (<u>See</u> Memorandum of Law at 14.)  In light of this established standard, the cases cited by Valentine are clearly distinguishable from the facts at issue here.  For example, Valentine highlights <u>Paiva v. Vanech Heights Constr. Co.</u>, 159 Conn. 512 (Conn. 1970), which stands only for the inapposite proposition that, while most claims for misrepresentation must pertain to past events, where a representation is made with an intent not to fulfill the promise, a claim for misrepresentation can succeed.  (Opp. at 21-22.)  In sharp contrast to <u>Paiva</u>, however, Valentine has provided no evidence whatsoever that the Corporate Defendants did not intend to fulfill any promises made.  Furthermore, a key difference between Paiva and the facts here is that the <u>Paiva</u> defendants actually had control over the construction of the apartment buildings at issue, while the Corporate Defendants can in no way control the outcome of the sporting events upon which Valentine gambled.

---

[3] <u>See, e.g.</u>, <u>Darvin v. Bache Halsey Stuart Shields, Inc.</u>, 479 F. Supp. 460, 462-64 (S.D.N.Y. 1979) (plaintiff would be "crazy" not to sell his stock); <u>Rotstein v. Reynolds & Co.</u>, 359 F. Supp. 109, 113 (N.D. Ill. 1973) (the stock was "red hot" and plaintiff "could not lose" by investing in it).

Valentine also cites <u>Cohen v. Koenig</u>, 25 F.3d 1168, 1172 (2d Cir. 1994), for the notion

that "a relatively concrete representation as to a company's future performance . . . may ground a

claim for fraud." (Opp. at 23.)  This case is not only distinguishable from Valentine's claim, but

it is also instructive in demonstrating the kind of specific claims necessary to overcome the

puffery exception.  In <u>Cohen</u>, the court denied the defendants' motion to dismiss, in part, because

the court found that the defendants' representation that their annual income would exceed a

million dollars, while technically a prediction of a future event because one month remained in

the year, could constitute fraud where the net income for the first 11 months of the year was only

approximately $107,000.  <u>Id.</u>  The court concluded that the defendants' representation could

almost certainly not be achieved.  <u>Id.</u>  The kind of highly specific and grossly exaggerated

misrepresentations found actionable in <u>Cohen</u> are completely at odds with the Corporate

Defendants' advertisements of their services providing predictions for sporting events.

The other cases cited by Valentine to support his misrepresentation claims similarly

highlight the differences between potentially actionable statements regarding future events and

those at issue here.  In <u>Goldman v. Beldon</u>, 754 F.2d 1059 (2d. Cir. 1985), the court found that a

company's positive forecasts based in part on the projected outcome of the breakup of AT&T

materially misled the public (Opp. at 23-26.), but as the court explained in <u>Sable v.

Southmark/Envicon Capital Corp.</u>, 819 F. Supp. 324, 336-38 (S.D.N.Y. 1993), the critical fact in

<u>Goldman</u> was that the instability resulting from the breakup of AT&T "was reasonably

susceptible of being known."  <u>Id.</u> at 337 (internal quotations and citations omitted).  Thus,

<u>Goldman</u> has no application to predictions concerning unknowable sporting event outcomes.

<u>Elkind v. Liggett & Meyers</u>, 635 F.2d 156, 164 (2d Cir. 1980), (Opp. at 24), ultimately

determined that it "cannot conclude as a matter of law that comments such as 'we expect another

7

good year in 1972' were likely to confirm the optimistic projections then in circulation or lead to the sophisticated and experienced listeners astray. . . ." Finally, in <u>Web Press Services Corp. v. New London Motors, Inc.</u>, 203 Conn. 342 (Conn. 1987), Valentine claims that written advertisements, more so than oral statements, should be considered beyond the puffery exception (Opp. at 24) – a concept that has no relevance here, given that Valentine's contacts with the Corporate Defendants were exclusively oral conversations after his response to a written advertisement offering a free pick, which was admittedly provided.

The Corporate Defendants use their best efforts to predict the outcomes of various sporting events and are experienced in doing so. (Landmon Dec. Exs. C-J.) However, they certainly do not claim, nor can be expected to *know*, the outcome of each event. From the vantage point of such an experienced gambler, the representations at issue here constitute no more than mere puffery, entitling Defendants to summary judgment.

V.    <u>The Evidence Does Not Support a CUTPA Claim</u>

Valentine identifies no evidence to meet the cigarette rule in order to support his alleged CUTPA claim. To begin with, instead of citing to a statute or other source of public policy, Valentine has simply postulated that Defendants violated some sort of broad "public policy of shielding consumers from corporate greed." (Opp. at 33.) However, nowhere is any such public policy set forth in CUTPA or in any other Connecticut statute. And for good reason – using such an unwieldy standard to support a CUTPA violation would encompass virtually every lawsuit between individuals and businesses.

Valentine also suggests that Defendants engaged in "deceptive advertising," and that such acts violate a public policy that CUTPA was designed to protect. (Opp. at 32-34.) Even if

CUTPA does afford such protection,[4] there is no evidence that Valentine relied on any of the advertisements attached to his Opposition (Opp. Exs. A-C.), as discussed above, or, perhaps more importantly, that Defendants' advertising was, in fact, deceptive. Valentine appears to contend that the advertising was deceptive in that it offered a free tip for prospective customers. (Opp. at 32-33.) However, Valentine admits that he received such a free pick. (Local Rule 56(a)(1) Statement ¶¶ 8-9.) Thus, this advertising was not deceptive in any sense.

Furthermore, Valentine has not met the second prong of the cigarette rule because he has failed to demonstrate how the Defendants' conduct was immoral, unethical, oppressive or unscrupulous. Although Valentine's Opposition surely contains much hyperbole regarding the extent to which Defendants' conduct allegedly meets this prong, nowhere does Valentine cite to any evidence or point to any case law supporting his position. In fact, the two cases Valentine principally relies upon do not support sustaining his claims here.[5]

Finally, Valentine does not even respond to Defendants' argument that he could have readily avoided any injury. In light of the overwhelming case law set forth in the Memorandum of Law (pages 23-26), Valentine's failure to respond to such argument is telling. Accordingly, Valentine's CUTPA claim is deficient because the cigarette rule has not been met.

---

[4] It should be noted that the primary case Valentine relies upon, Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312 (2d Cir. 1982), does not even involve a CUTPA claim.

[5] Murphy v. McNamara, 416 A.2d 170, 175-76 (Conn. Super. Ct. 1979), stands for the unremarkable proposition that conduct violating public policy explicitly set forth in a Connecticut statute violates CUTPA. Valentine has pointed to no such statute here. Moreover, Exposition Press, Inc. v. FTC, 295 F.2d 869, 872 (2d Cir. 1961), simply stands for the proposition that an explicitly false and deceptive advertisement violates Section 5 of the Federal Trade Commission Act. Valentine, however, has not presented any evidence to demonstrate that he relied upon advertisements by the Defendants that were, in fact, deceptive.

## CONCLUSION

In light of the foregoing and the arguments set forth in their Memorandum of Law,

Defendants respectfully request that the Court grant their Motion for Summary Judgment.

Dated:  September 3, 2004.

Respectfully Submitted,

BY:  /s/ Mark D. Alexander

Mark D. Alexander (ct20645)
E-mail:  mda@avhlaw.com
Chad A. Landmon (ct20932)
E-mail:  cal@avhlaw.com
Erin M. Boggs (ct22989)
E-mail:  emb@avhlaw.com
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT  06103-3702
Telephone:    (860) 275-8100
Facsimile:    (860) 275-8101

Attorneys for Defendants

10

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 3, 2004, a copy of the foregoing Reply Brief in Further

Support of Defendants' Motion for Summary Judgment was filed electronically and served by

mail on any party unable to accept electronic filing.  Notice of this filing was sent by e-mail to all

parties by operation of the Court's electronic filing system or by mail to any party unable to

accept electronic filing.  Parties may access this filing through the Court's filing system.


<u>/s/ Chad A. Landmon</u>
Chad A. Landmon

11