# EXHIBIT A

LEXSEE 1999 U.S. DIST. LEXIS 23321

JOSEPH LISELLA, Plaintiff, v. FORD MOTOR COMPANY, Defendant.

Civil No. 3:97CV2001 (DJS)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*1999 U.S. Dist. LEXIS 23321*

**October 26, 1999, Decided**
**October 26, 1999, Filed**

**DISPOSITION:** [*1] Defendant's motion for summary judgment was granted. Judgment was entered.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Joseph Lisella, Plaintiff: Kevin B. Carroll, LEAD ATTORNEY, Rocky Hill, CT.

For Ford Motor Co., Defendant: James M. Campbell, LEAD ATTORNEY, Campbell, Campbell, Edwards & Conroy, Boston, MA.

For Ford Motor Co., Defendant: Mark Judson Hoover, LEAD ATTORNEY, Campbell, Campbell & Edwards, East Hartford, CT.

**JUDGES:** DOMINIC J. SQUATRITO, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** DOMINIC J. SQUATRITO

**OPINION:**

### MEMORANDUM OF DECISION

The plaintiff, Joseph Lisella, brings this products liability action pursuant to *Conn. Gen. Stat. 52-572m, et seq.*, arising out of his involvement in a car accident while operating a 1994 Ford Escort manufactured by the defendant, Ford Motor Company. The complaint alleges the defendant's failure to warn that the product was unsafe for use by the consuming public, misrepresentation concerning the safety of the product for use by the consuming public, breach of implied warranty of merchantability, breach of express warranties that the product was safe and effective for its intended use, failure to disclose the dangerous and damaging propensities of the product, negligent [*2] manufacture and/or distribution of the product, and failure to provide sufficient notice to the plaintiff of the dangerous propensities of the product. n1 Now pending before the court is the defendant's motion for summary judgment, which, for the reasons that follow, is granted.

n1 Although the complaint does not specify which portions of the automobile are claimed to be defective, the plaintiff's subsequent pleadings in this action center around the automobile's allegedly defective airbag and seat belt systems. See Lisella Aff., Pl.'s Mem. Supp. Opp'n Def.'s Mot. Summ. J. (doc. # 23), Ex. A.

#### I. Facts

Examination of the memoranda, affidavits, and Local Rule 9 statement submitted in support of the motion for summary judgment discloses the following. n2

n2 The court notes that the plaintiff did not file a Local Rule 9(c)(2) Statement in conjunction with his opposition to the defendant's motion for summary judgment. Accordingly, "all material facts set forth in [the defendant's Local Rule 9(c)(1) Statement] will be deemed admitted." D. Conn. Loc. R. 9(c)(1).

[*3]

1999 U.S. Dist. LEXIS 23321, *

On September 10, 1995, the plaintiff was driving a 1994 Ford Escort when he was involved in a two-car accident in the town of Preston, Connecticut. The plaintiff was traveling at a speed of 35 to 45 miles per hour just prior to the accident. The plaintiff alleges that his automobile's seat belt failed to stop his forward movement upon collision of the two vehicles, and that the driver's side air bag inflated belatedly and weakly during the accident. The plaintiff further alleges that in addition to causing injuries to his head, nose, teeth, chest, torso and knees, the accident resulted in damage to a sternotomy wire placed in his chest during open heart surgery shortly prior to the accident.

## II. Standard

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See *Fed. R. Civ. P. 56(c)*; *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*; *Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994).* [*4] The determination of what facts are material to a particular claim is made based upon the substantive law upon which that claim rests. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. A dispute regarding a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson, 477 U.S. at 248*.

In determining whether there is a genuine issue as to any material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. See *Anderson, 477 U.S. at 255*; *Gallo, 22 F.3d at 1223*; *Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)*; *Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983)*. The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)*.

On a motion for summary judgment, a court cannot try issues of fact; it can only determine whether there [*5] are issues to be tried. See *Anderson, 477 U.S. at 255*; *Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987)*. The function of the court at this stage is not to weigh the evidence and determine what is true, but rather to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*.

## III. Discussion

The defendant moves for summary judgment on the grounds that "(1) there is no evidence to support a finding that any alleged timely deployment of the air bag would have prevented or reduced the severity of Mr. Lisella's alleged injuries; and perhaps more importantly, (2) there is no evidence to support a finding that the air bag did not deploy in a timely manner in the accident." Def.'s Mem. Supp. Mot. Summ. J. (doc. # 17) at 1. Essentially, the defendant argues that the plaintiff has failed to identify an expert to testify as to the "allegedly defective design of the air bag system, the forces, angles, crush and the like, that were generated in this particular [*6] accident or occupant kinematics and injury causation in this accident." Id. at 5. In the absence of an expert, the defendant contends that a jury will be unable to reasonably determine whether the automobile's air bag system operated properly and what were the actual causes of the plaintiff's injuries, thereby necessitating summary judgment in the defendant's favor at this time.

The plaintiff concedes that he has not identified an expert to testify in this matter, but nevertheless contends that a genuine issue of material fact exists as to whether the air bag and seat belt systems were defective and the causal relationship of such defect to the plaintiff's damages. The plaintiff relies upon his deposition testimony and that of the ambulance staff to support his allegations as to the character and performance of the seat belt and air bag systems at issue in this matter.

The plaintiff's proffered evidence is insufficient to defeat the defendant's motion because, despite its generally restrictive attitude towards summary judgment, the Court of Appeals for the Second Circuit has repeatedly indicated that a litigant opposing summary judgment "'may not rest upon mere conclusory allegations [*7] or denials' as a vehicle for obtaining trial." *Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980)* (quoting *Fed. R. Civ. P. 56 (e)*); see *Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993)* ("If the movant satisfies the burden of establishing that there is no genuine issue of material fact, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists."). n3 Rather, in products liability cases such as this, "where the issue concerns a product's design . . . it would seem that expert opinion is the only available method to establish defectiveness, at least where the design is not patently defective." *Huddell v. Levin, 537 F.2d 726, 736 (3rd Cir. 1976)*; see *Bauman v. Volkswagenwerk Aktiengesellschaft, 621 F.2d 230, 234 (6th Cir. 1980)* ("Cases involving product liability or design defect are sometimes difficult to prove because the allegedly defective part is damaged. It is difficult to tell whether

Case 3:03-cv-00153-DJS     Document 57-2     Filed 09/03/2004     Page 4 of 19

Page 3
1999 U.S. Dist. LEXIS 23321, *

the defect caused the accident or the accident caused the defect. Where the **[\*8]** part is not patently defective, expert testimony is the only available method to establish defectiveness."); *Humphreys, 839 F. Supp. at 827* ("Proving the defect requires relating the force of the collision, the design and construction of the device, and occupant kinematics. Evaluating this relationship is beyond the capacity of lay persons and requires expert testimony."); *Jaffe v. State Dep't of Health, 135 Conn. 339, 349, 64 A.2d 330 (1949)* (requiring that where an issue presented is such that its solution can only be reached upon the basis of the special knowledge of expert witnesses, such evidence be produced); see also *Makuc v. American Honda Motor Co., 835 F.2d 389, 392 (1st Cir. 1987)* ("A motorbike is not a simple device. Rather it is a product consisting of a number of relatively complex working parts. This sophistication precludes the jury from drawing an inference of causation based upon common knowledge. Therefore, expert testimony was required on the issue of causation.") (citations omitted). Moreover, expert testimony is invaluable in these cases "'to elucidate the mechanics of the accident, to indicate the different reconstructions **[\*9]** of the sequence that might be inferred, and to describe the physical injuries sustained by each plaintiff and the damaging forces that could be inferred from those injuries.'" *Caiazzo v. Volkswagenwerk, A.G., 647 F.2d 241, 251 (2d Cir. 1981)* (quoting *Caiazzo v. Volkswagenwerk, A.G., 468 F. Supp. 593, 598 (E.D.N.Y. 1979)).*

n3 The plaintiff also objects to summary judgment on the ground that, due to the defendant's delay of two months in supplying him with its expert's report, he was prejudiced in his attempts to oppose the instant motion. However, the plaintiff's inability to depose the defendant's expert before responding to the instant motion does not prevent the plaintiff from meeting his burden of establishing a disputed issue of material fact via the proffer of some affirmative evidence of his version of the events. See *United States v. Potamkin Cadillac Corp., 689 F.2d 379, 381 (2d Cir. 1982)* (requiring a litigant opposing summary judgment to bring to the court's attention some affirmative indiction that his version of the events is not fanciful); see also

*Humphreys v. General Motors Corp., 839 F. Supp. 822, 825 (N.D. Fla. 1993)* (allowing the defendant to rely on the complete absence of an essential element of the plaintiff's case to support its motion for summary judgment), aff'd, *47 F.3d 430 (11th Cir. 1995).*

**[\*10]**

Therefore, due to the plaintiff's failure to proffer expert testimony concerning the allegedly defective design or operation of the subject restraint system and the cause of the plaintiff's injuries, the court finds that the defendant has carried its burden of showing that the record reveals no genuine issue of material fact as to the plaintiff's products liability claim. See *Tiner v. General Motors Corp., 909 F. Supp. 112, 117-19 (N.D.N.Y. 1995)* (granting summary judgment in favor of defendant automobile manufacturer where plaintiff alleging defective design, manufacture or installation of air bag and seat belt failed to offer competent proof, e.g., by way of expert testimony, of a design defect in the seat belt or air bag, or that her injuries were caused or enhanced by any alleged defect); *Humphreys, 839 F. Supp. at 826-29* (granting summary judgment in favor of defendant automobile manufacturer where plaintiff alleging defective car seat back locking device, in failing to offer any expert testimony regarding the presence of a defect or the causation of her injuries, had failed to present genuine issue of material fact for trial). Accordingly, the **[\*11]** defendant's motion for summary judgment must be granted.

## IV. Conclusion

For the above reasons, the defendant's motion for summary judgment (doc. # 16) is **GRANTED**. The clerk is directed to enter judgment accordingly and close this file.

It is so ordered.

Dated at Hartford, Connecticut, this 26th day of October, 1999.

DOMINIC J. SQUATRITO

UNITED STATES DISTRICT JUDGE

# EXHIBIT B

LEXSEE 2001 U.S. DIST. LEXIS 14354

**WALLACE ROBERTS, Plaintiff, v. JUDICIAL DEPARTMENT, THOMAS WHITE, Defendants.**

**CASE NO. 99CV14 (RNC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2001 U.S. Dist. LEXIS 14354*

**March 28, 2001, Decided**

**DISPOSITION:** [*1] Motion granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For WALLACE ROBERTS, plaintiff: Angelica N. Papastavros, Williams & Pattis, New Haven, CT. Norman A. Pattis, Williams & Pattis, New Haven, CT. W. Martyn Philpot, Jr., Law Offices of W. Martyn, Philpot, Jr., LLC, New Haven, CT.

For JUDICIAL DEPARTMENT, THOMAS WHITE, defendants: Michael Robert Bullers, Attorney General's Office, Hartford, CT.

**JUDGES:** Robert N. Chatigny, United States District Judge.

**OPINIONBY:** Robert N. Chatigny

**OPINION:**

RULING AND ORDER

Plaintiff, a juvenile detention officer employed by the State of Connecticut Judicial Branch, brings this employment discrimination action under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and *42 U.S.C. § 1983* against the Judicial Branch and Thomas White, a Judicial Branch employee. Plaintiff claims that defendants have failed to promote him because of illegal discrimination based on race and age. He also claims that White has retaliated against him for filing a charge of discrimination. Defendants have moved for summary judgment on all claims on various grounds. For reasons that follow, the motion is granted.

I. Background

Unless otherwise [*2] identified, the following narrative is drawn from unopposed facts asserted in defendants' Local Rule (9)(c)(1) statement. n1

> n1 Plaintiff has responded to statements of fact in defendants' (9)(c)(1) statement by stating that he has insufficient information to admit or deny them. Pursuant to Local Rule (9)(c)(1), those statements of fact are deemed admitted because they have not been controverted.

Plaintiff is a black male who was born on June 23, 1937. He has been a juvenile detention officer ("JDO") at the detention facility in New Haven since September 1994. He holds a B.A. in sociology with a minor in psychology from Queens College in New York. See Pl.'s Mem. Ex. 4 ("Pl.'s Dep I") at 9. For twenty years, until 1984, he worked in the New York City corrections system. He was an entry-level corrections officer for approximately 13 years. He was promoted to captain in 1976 and served in several facilities at that rank until 1981, when he was appointed one of several Assistant Deputy Wardens at the Queens [*3] House of Detention. He held that position for approximately two years until he retired. See generally Pl.'s Dep I at 16-46.

Upon retirement, plaintiff moved to Connecticut and pursued various ventures from 1984 until 1994, none of which involved corrections-type work. During the last two years of that period, plaintiff worked at Long Lane School, first as a substitute teacher and then as a tutor and achievement tester. In 1994, he took his present position in New Haven. Since then, he has been denied

2001 U.S. Dist. LEXIS 14354, *

each of the numerous promotions for which he has applied.

The following promotions are of particular relevance to the present motion. In 1995, plaintiff applied for and was denied a Shift Supervisor position, one step up the juvenile detention chain of command from his position. n2 In September 1996, he applied for the positions of Classification and Program Officer ("CPO") and Program Services Coordinator ("PSC") at the New Haven facility. These positions formed the mental health component of the facility's chain of command and reported to the Assistant Supervisor and Supervisor. In November 1997, plaintiff applied for the position of Supervisor of the New Haven facility; he was [*4] denied the promotion on March 15, 1998, when Dr. John Chapman was elevated from Assistant Supervisor/Acting Supervisor to Supervisor.

> n2 The chain of command within a juvenile detention facility consisted of the Supervisor, Assistant Supervisor, Shift Supervisors, and JDOs.

In April 1998, plaintiff filed a discrimination charge with the CHRO and the EEOC. His affidavit in support of the charge alleged that he had been passed over for promotion repeatedly during his tenure with the Judicial Branch, mentioning specifically the denial of his application for promotion to the Supervisor's position in 1998.

Shortly after plaintiff filed his EEOC charge, the Judicial Branch began a major reorganization. Juvenile Detention was merged with several other divisions to form the new Court Support Services Division ("CSSD"). n3 Many new positions were created, several of which plaintiff applied for and none of which he received. In November 1998, plaintiff applied to be Director of Operations of CSSD, one step below the division's [*5] Executive Director. The position was given to defendant White, who had been Director of Juvenile Detention before the reorganization. n4 In January 1999, plaintiff applied to be one of five "Deputy Directors of Regional Services" within CSSD. These positions reported directly to White, who was on the interview committee for the positions. At the same time, plaintiff applied to be one of thirteen Regional Managers, who reported to the Deputy Directors. The same panel, including White, interviewed the Regional Director applicants. Plaintiff received none of the new CSSD positions.

> n3 CSSD comprises Juvenile Detention, Adult and Juvenile Probation, the Bail Commission, Alternative Sanctions, and Family Relations.

> n4 This was not the first time defendant White and plaintiff competed for a job. In 1995, plaintiff applied for the then-new position of Director of Juvenile Detention. The position went to White, who held it until the 1998 reorganization.

## II. Discussion

Defendants' arguments in support of [*6] their motion for summary judgment run the gamut from jurisdictional challenges through failure to state a claim to failure to produce sufficient evidence to prevail at trial. They are addressed in that order.

### A. ADEA Claim Against Judicial Branch

The amended complaint alleges that the Judicial Branch has violated the ADEA by denying plaintiff promotions due to his age. As defendants argue (and plaintiff reportedly concedes, see Defts.' Mem. [doc. 19] at 2 n.1), this claim is barred by the Judicial Branch's Eleventh Amendment sovereign immunity. See *Kimel v. Florida Board of Regents, 528 U.S. 62, 145 L. Ed. 2d 522, 120 S. Ct. 631 (2000).* Therefore, defendants' motion for summary judgment is granted as to plaintiff's ADEA claim.

### B. Identifying Plaintiff's Remaining Claims

Because of a lack of specificity in plaintiff's papers, it is necessary to sort out what claims he brings against each defendant and what promotion denials are encompassed by the various claims.

*Title VII Race Claim.*

Plaintiff's amended complaint specifically identifies only one promotion denial -- the failure to promote him to the Supervisor position in March 1998. See Am. Compl. [doc. 9] P10. In countering [*7] defendants' arguments as to timeliness and exhaustion, plaintiff contends that his Title VII claim alleges a single, continuing violation, but he does not identify what is included in the claim. See Pl.'s Mem. [doc. 25] at 8. His papers in opposition to summary judgment refer to the 1998 Supervisor position, the 1996 CPO position, the 1996 PSC position, and the 1995 Shift Supervisor position. Accordingly, I will assume that plaintiff's Title VII race claim is based on the failure to promote him to those four positions.

*Section 1983 Race & Age Claim.*

Case 3:03-cv-00153-DJS    Document 57-2    Filed 09/03/2004    Page 8 of 19

Page 3
2001 U.S. Dist. LEXIS 14354, *

The amended complaint alleges that defendant White failed to promote plaintiff to the Supervisor position in 1998 because of racial and age animus. n5 Plaintiff argues in his memorandum that White also discriminated against him in connection with his applications for the 1996 positions, see Pl.'s Mem. at 13, but a memorandum of law cannot be used to amend the complaint, see *Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996); Natale v. Town of Darien, 1998 U.S. Dist. LEXIS 2356, *10, No. 3:97 CV 583 (AHN), 1998 WL 91073,* at \*4 n.2 (D. Conn. Feb. 26, 1988). Accordingly, plaintiff's section 1983 race and age claim [\*8] is limited to the failure to promote him to the Supervisor position in 1998.

n5 The amended complaint alleges that the failure to promote in March 1998 was also retaliatory, see Am. Compl. P12, but in his deposition plaintiff stated that his retaliation claim is based on actions that occurred after he filed his April 1998 EEOC charge. See Pl.'s Mem. Ex. 5 ("Pl.'s Dep. II") at 135. Moreover, he has not identified any complaints of discrimination he made before 1998. See Pl.'s Dep. I at 102.

**Section 1983 Retaliation Claim.**

Plaintiff testified that his retaliation claim against defendant White is limited to actions taken by White after plaintiff filed his CHRO complaint in April 1998. See Pl.'s Dep. II at 135. In his memorandum, plaintiff identifies as the basis for this claim his unsuccessful applications for the positions of Deputy Director of Regional Services and Regional Manager, for which he applied in January 1999. See Pl.'s Mem. at 14-15. His retaliation claim is thus deemed to include [\*9] those two positions. n6

n6 The amended complaint does not contain a Title VII retaliation claim against the Judicial Branch.

**C. Title VII Claim: Timeliness & Exhaustion**

Defendants argue that to the extent plaintiff's Title VII claim is based on promotion denials that preceded the denial of his application for the Supervisor position in 1998, his claim fails to comply with Title VII's administrative preconditions to suit. More specifically, defendants contend that earlier promotion denials (1) took place more than 300 days before the filing of plaintiff's EEOC charge and are therefore time-barred

and (2) were not administratively exhausted because they were not included in the EEOC charge. n7 I agree with defendants' first argument.

n7 Defendants argue that the failure to exhaust deprives the court of subject matter jurisdiction, relying on language in *Butts v. City of New York Dep't of Hous. Preserv. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).* Since defendants filed their papers, the Second Circuit has clarified that failure to exhaust, like failure to meet the time limits imposed by Title VII, is not jurisdictional and thus is subject to waiver. *Francis v. City of New York, 235 F.3d 763, 766-68 (2d Cir. 2000).* While not a jurisdictional requirement, exhaustion is nevertheless an "essential element of Title VII's statutory scheme" and a necessary "precondition to bringing a Title VII claim in federal court;" failure to exhaust, if not waived, will bar the suit. Id.

**[\*10]**

When a person files a discrimination charge with a state equal employment opportunity agency, Title VII requires him to file a complaint with the EEOC within 300 days of the alleged act of discrimination. See *Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).* "This requirement functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." Id. (citations omitted). Because plaintiff filed his EEOC complaint on or about April 16, 1998, the 300-day period extends back to approximately June 20, 1997. Of the four promotion denials at issue on the Title VII claim, this period encompasses only the promotion denial in 1998. Accordingly, the earlier promotion denials are not actionable under Title VII unless saved by some exception to the 300-day limit.

As noted, plaintiff argues that the earlier promotion denials are not time-barred because "his claim is a single, continuing violation." Pl.'s Mem. at 8. "The continuing-violation exception 'extends the limitations period for all claims of discriminatory acts committed *under an ongoing policy of* [\*11] *discrimination* even if those acts, standing alone, would have been barred by the statute of limitations.'" *Quinn, 159 F.3d at 765* (quoting *Annis v. County of Westchester, 136 F.3d 239, 246 (2d Cir. 1998))* (emphasis added by Quinn).

"The continuing-violation exception applies where there is evidence of specific discriminatory practices, such as the repeated use of discriminatory seniority lists

or employment tests." *Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997)*. "'Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" *Quinn, 159 F.3d at 765* (quoting *Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993))*. Thus, a series of discriminatory actions makes out a continuing violation only when "there is a relationship between the series and an invalid, underlying policy." *Connecticut Light & Power Co. v. Secretary of United States Dep't of Labor, 85 F.3d 89, 96 (2d Cir. 1996)*. n8

> n8 *Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)*, which held that a continuing violation may be found when "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," did not greatly expand the continuing violation doctrine. Cornwell is the only case in which the Second Circuit has found a continuing violation under this somewhat broader definition, and this case is clearly distinguishable from Cornwell. In Cornwell, the district court, as trier-of-fact, found that defendant had personnel policies that discriminated on the basis of gender and that the plaintiff had suffered sexual discrimination at the hands of her supervisors and co-workers so severe and pervasive that it led to a three-year absence due to an illness precipitated by the harassment. It bears noting that each of the cases cited in the text were decided by the Second Circuit after Cornwell.

**[*12]**

The four promotion denials at issue in this case constitute separate and distinct acts that are not continuing in nature. See *Malarkey v. Texaco, 559 F. Supp. 117, 121 (S.D.N.Y. 1982)* ("Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing nature'"); see also *Choi v. Chemical Bank, 939 F. Supp. 304, 311 (S.D.N.Y. 1996)* (the continuing-violation exception does not apply to discrete incidents of nonpromotion). Accordingly, to avoid summary judgment, plaintiff must produce evidence that the promotion denials resulted from some underlying policy or mechanism of discrimination. See *Lightfoot, 110 F.3d at 907; Lambert, 10 F.3d at 53*.

Plaintiff has not alleged or argued that the promotion denials are the product of a policy of discrimination. Nor has he offered evidence that reasonably would permit

such an inference to be drawn. His Title VII claim is therefore time-barred with regard to the promotion denials that preceded the denial of his application for promotion in 1998.

D. Section 1983 Retaliation Claim **[*13]**

Plaintiff's equal protection claim against defendant White alleges that White failed to promote him because of his CHRO and EEOC complaints concerning the failure to promote him to the Supervisor position in 1998. There is no authority for a retaliation claim under the Fourteenth Amendment when the protected activity is a complaint of race or age discrimination. See *Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996)* ("We know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination."). Accordingly, defendant White's motion for summary judgment on the section 1983 retaliation claim is granted.

E. Title VII and Section 1983 Claims on the Merits

After the foregoing analysis, the claims that remain to be addressed on the merits are plaintiff's claim against the Judicial Branch under Title VII for race discrimination in connection with the failure to promote him to the Supervisor position in 1998 and his claim against White under section 1983 for race and age discrimination in connection with the same promotion denial. n9 These claims are analyzed using the three-step, burden-shifting framework **[*14]** established in *McDonnell Douglas, 411 U.S. 792, 802-04, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*. See *Sorlucco v. New York City Police Dep't, 888 F.2d 4, 6-7 (2d Cir. 1989)*. Plaintiff must first establish a prima facie case by showing (1) that he was member of a protected class, (2) that he was qualified for the position for which he applied, and (3) that he was denied the position (4) in circumstances giving rise to an inference of discrimination. See *Brown v. Coach Stores, 163 F.3d 706, 709-10 (2d Cir. 1998); Austin v. Ford Models, Inc., 149 F.3d 148, 152 (2d Cir. 1998)*. Defendants must then articulate "a legitimate, nondiscriminatory reason" for giving the position to Dr. Chapman. See *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000)*. If such a reason is provided, plaintiff bears the ultimate burden of proving that it is a pretext for illegal discrimination. See id.

> n9 Defendants argue that plaintiff's entire section 1983 claim should be dismissed for failure to meet a heightened pleading requirement allegedly applicable to section 1983 claims against individuals who assert a qualified immunity defense. While I recognize that neither

the Supreme Court nor the Second Circuit has ruled on the question directly, I am not persuaded that any such pleading requirement is viable in light of *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993).* The Second Circuit has subsequently held that

> since qualified immunity is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment, a plaintiff, in order to state a claim of constitutional violation, need not plead facts showing the absence of such a defense.

*Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996).* More recently, the Supreme Court has suggested methods of addressing the question of qualified immunity that do not involve a heightened pleading requirement. See *Crawford-El v. Britton, 523 U.S. 574, 597-600, 140 L. Ed. 2d 759, 118 S. Ct. 1584 (1998).* Accordingly, I do not rely on defendants' heightened pleading argument in limiting the section 1983 claim.

It bears noting that even if the heightened pleading requirement applied, the section 1983 claim would look the same at this point. The denial of the 1998 Supervisor position is quite specifically pleaded, see Am. Compl. P10, and the earlier discussion eliminated prior incidents not because they are vaguely plead against defendant White but because they are not plead at all.

**[*15]**

Defendants, who apparently concede that plaintiff has established a prima facie case, state that they chose Dr. Chapman because of his superior employment and educational qualifications and his performance in the interview. See Defts.' Mem Ex. D ("White Aff.") at P41; Defts.' Mem Ex. F ("Cunningham Aff.") at P19. The burden thus shifts to plaintiff to offer evidence that this explanation is a pretext for discrimination.

Plaintiff has not sustained this burden. In arguing that defendants' explanation is a pretext, he does not dispute the facts set forth in defendants' memorandum regarding Chapman's superior qualifications and experience. See Defts. Mem. at 27-29, Pl.'s Mem. at 11-12. Moreover, the arguments plaintiff presents are either

contrary to or unsupported by evidence in the record. For example, he argues that he was the superior candidate because of his "experience within the facility, the grass roots support he engendered with his peers, and the type of integrated management which could have been achieved if they chose to promote [him]." Id. However, the record establishes that Dr. Chapman had been the Assistant Supervisor of the New Haven facility since 1990, **[*16]** that he had been Acting Supervisor since August 1997, and that plaintiff was not hired until 1994, at which time he was given the JDO position, at least two levels below Chapman in the chain of command. Plaintiff presents no evidence of "grassroots support" from his peers, Dr. Chapman's alleged "passivity" as Assistant Supervisor, or how he would be a better manager than Chapman. n10

> n10 Plaintiff does not dispute that Chapman scored higher in the interview and appears to concede that during the interview he expressed reservations about working with female officers on the male side of the detention facility. He presents no evidence to support his claim that a cultural misunderstanding may have contributed to defendants' perception that he had a negative attitude toward women, and his deposition testimony reveals no difficulties in communication.

Because plaintiff provides no evidence to support a finding that defendants' explanation is a pretext for discrimination, defendants' motion is granted as to the **[*17]** Title VII claim and the section 1983 claim to the extent it is based on race and age. n11

> n11 While it is well settled that evidence supporting a prima facie case should be considered at the final stage of the burden-shifting analysis, see *Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000),* and it is possible that in some cases such evidence alone can be sufficient to support an ultimate inference of discrimination, see *Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995),* plaintiff's prima facie case consists only of the facts that the person appointed was white and younger. That evidence would be insufficient to sustain plaintiff's burden at trial.

Conclusion

2001 U.S. Dist. LEXIS 14354, *

To summarize, defendants have shown that they are entitled to summary judgment on all the claims in the amended complaint. Plaintiff's ADEA claim is barred by sovereign immunity. His Title VII claim is time-barred insofar as it is based on promotion denials that preceded the denial of [*18] his application for promotion to the Supervisor position in 1998. His Title VII claim based on the 1998 promotion denial fails to withstand the motion for summary judgment because on the record now before the court no reasonable jury could find that defendants' explanation for choosing Dr. Chapman is a pretext for racial discrimination. Plaintiff fails to state a section 1983 claim against defendant White for retaliation in violation of the Equal Protection Clause, and fails to present sufficient evidence to support a finding that White intentionally discriminated against him on the basis of race or age. n12

n12 Because plaintiff has failed to raise a triable issue as to whether his constitutional rights have been violated, there is no need to address the question whether defendant White is entitled to qualified immunity.

Accordingly, the motion for summary judgment is hereby granted. The Clerk may close the file.

So ordered.

Dated at Hartford, Connecticut this 28th day of March 2001.

___

Robert N. Chatigny [*19]

United States District Judge

# EXHIBIT C

LEXSEE 2000 U.S. DIST. LEXIS 21857

JAMES HANTON v. OFFICER MATHIAU, ET AL. n1

n1 The other defendants in this action are: Lieutenant Campbell, Lieutenant Allen, Captain Cleaver and Anthony J. Bruno.

PRISONER Case No. 3:98CV1388 (HBF)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*2000 U.S. Dist. LEXIS 21857*

September 19, 2000, Decided
September 20, 2000, Filed; September 22, 2000, Entered on Docket

**SUBSEQUENT HISTORY:** *Affirmed, Hanton v. Mathiau, 2002 U.S. App. LEXIS 4118 (2d Cir. Conn. Mar. 13, 2002).*

**DISPOSITION:** [*1] Defendants' Motion for Summary Judgment GRANTED. Claim concerning plaintiff's inability to attend Taleem services on October 11, 1997 dismissed.

**LexisNexis(R) Headnotes**

**COUNSEL:** JAMES HANTON, plaintiff, Pro se, Cheshire, CT.

For MATHIAU, CAMPBELL, ALLEN, CLEAVER, ANTHONY J. BRUNO, defendants: Steven R. Strom, Peregrine Alban Zinn-Rowthorn, Attorney General's Office, Hartford, CT.

**JUDGES:** Holly B. Fitzsimmons, United States Magistrate Judge.

**OPINIONBY:** Holly B. Fitzsimmons

**OPINION:**

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff brings this action pro se and in forma pauperis pursuant to *28 U.S.C. § 1915.* In his complaint, the plaintiff claims that the defendants denied him access to the courts, deprived him of the opportunity to practice his religion and placed him in a cell in the prison infirmary against his wishes. The plaintiff seeks damages from the defendants in their individual capacities. Pending before the Court is defendants' motion for summary judgment. For the reasons that follow, the motion is granted.

Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material [*2] fact in dispute and that it is entitled to judgment as a matter of law. *Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).* A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" *Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993)* (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.)* (quoting *Anderson, 477 U.S. at 248),* cert. denied, *506 U.S. 965, 121 L. Ed. 2d 359, 113 S. Ct. 440 (1992).* After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of (its) case with respect to which (it) has the burden of proof," then summary Judgment is appropriate. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* [*3]

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the

nonmoving party must present "significant probative evidence to create a genuine issue of material fact." *Soto v. Meachum, 1991 U.S. Dist. LEXIS 14824, Civ. No. B-90-270 (WWE), 1991 WL 218481,* at *6 (D. Conn. Aug. 28, 1991). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich, 963 F.2d at 523.* Thus, "only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci, 923 F.2d 979, 982* (2d Cir.), cert. denied, *502 U.S. 849, 116 L. Ed. 2d 117, 112 S. Ct. 152 (1991).* See also *Suburban Propane v. Proctor Gas. Inc., 953 F.2d 780, 788 (2d Cir. 1992).*

FACTS n2

n2 The relevant facts are taken from the defendants' Revised Statement of Material Facts Not In Dispute [doc. # 40], the affidavits of Dr. Edward Blanchette [doc. # 31], William Mathiau [doc. # 27], and David Patterson [doc. # 26], and the documentary evidence submitted by the parties. Because the plaintiff has not filed a Local Rule 9(c)2 Statement in opposition to the defendants' motion for summary Judgment, the facts contained in the defendants' Revised Local Rule 9(c)1 Statement [doc. # 40] are deemed admitted. D. Conn. L. Civ. R. 9(c)1.

[*4]

At all times relevant to the allegations in the complaint, the plaintiff was incarcerated at the MacDougall Correctional Institution. On August 7, 1997, the plaintiff went to the infirmary for sick call. A correctional head nurse informed Correctional Counselor Patterson that Dr. Edward Blanchette, the Director of Clinical Services for the Connecticut Department of Correction, wanted the plaintiff placed in the infirmary for continuous assessment, observation and evaluation to determine the etiology of the plaintiff's medical complaints. Dr. Blanchette had stated that although the plaintiff could refuse medical treatment, he would not accept the plaintiff's refusal to be visually monitored in the infirmary. Correctional Officer Mathiau made several verbal requests to the plaintiff to enter a cell in the infirmary. The plaintiff repeatedly refused to enter the cell and lock up. The plaintiff stated that he wanted to return to his cell in general population to pack up his property, including his legal papers before he was placed in the infirmary cell. Correctional staff advised the plaintiff that he did not need his personal property because clothing and other items would be provided [*5] to him in the infirmary. Officer Mathiau also informed

the plaintiff that Counselor Patterson would be notified about retrieving the plaintiff's legal papers. The plaintiff did not indicate that any of the materials in his cell in general population were needed immediately.

After the plaintiff failed to respond to Officer Mathiau's verbal requests to enter the infirmary cell, the officer gave the plaintiff a direct order to enter the cell. The plaintiff refused to obey the order and Officer Mathiau reported the situation to the sector lieutenant. Sector Lieutenant Campbell responded to the infirmary with several other officers. The plaintiff was again ordered to enter the infirmary cell and lock up, but the plaintiff refused to obey the order. The hospital area was cleared of workers and the exits were secured. Lieutenant Campbell informed the plaintiff that if he failed to enter the cell, he would be physically placed in the cell. When the plaintiff again refused to enter the cell, he was physically escorted into the cell and the door was secured. The plaintiff was issued a disciplinary report for causing a disruption.

After the plaintiff was placed in the infirmary cell, Counselor [*6] Patterson spoke to the plaintiff. In response to the plaintiff's requests, Counselor Patterson returned to the plaintiff's previous call in general population to retrieve the plaintiff's property, when counselor Patterson learned that the plaintiff's property had been packed up and sent to the admitting and processing area, he proceeded to the area, gathered what appeared to be legal paperwork and delivered the items to the plaintiff in the infirmary that same day.

Subsequently, the plaintiff was transferred to the restrictive housing unit. During the plaintiff's confinement in the restrictive housing unit, Counselor Patterson escorted the plaintiff to obtain whatever legal materials he needed from the property room. The plaintiff chose the materials he needed and was escorted back to the unit. The plaintiff was permitted to keep these items in his cell in the restrictive housing unit. The plaintiff seeks monetary damages from the defendants in their individual capacities only.

Discussion

The court notes that on July 24, 2000, the court filed a ruling and order including a notice to the plaintiff pursuant to *McPherson v. Coombe, 174 F.3d 276 (2d Cir. 1999).* [*7] The court informed the plaintiff that any factual assertions in the documents accompanying the defendants' motion for summary judgment would be accepted as true unless the plaintiff filed affidavits or other documentary evidence contradicting the assertions. The court indicated that the plaintiff could not simply rely on his complaint or his memorandum in opposition to the motion for summary judgment. In addition, the court noted that the plaintiff had not filed a Local Rule

9(c)2 Statement setting forth the facts that remain in dispute. In response to the court's notice, the plaintiff has filed a memorandum with attached exhibits.

The defendants offer three arguments in support of their motion for summary judgment: (1) the plaintiff has failed to allege a cognizable injury in connection with his claim of denial of access to the courts; (2) the plaintiff has failed to allege a violation of his Eighth Amendment rights; (3) the plaintiff has failed to exhaust his administrative remedies as to his religion claims; and (4) the plaintiff has failed to allege that he was denied the opportunity to practice his religion.

I. Access to Courts

The plaintiff claims that the defendants [*8] denied him access to the court on August 7, 1997, when they failed to provide him with his legal materials. The defendants contend that the plaintiff's access to courts claim fails because he has not demonstrated that he suffered a injury cognizable under *Lewis v. Casey, 518 U.S. 343, 135 L. Ed. 2d 606, 116 S. Ct. 2174 (1996).*

In Lewis, the Supreme Court clarified what is encompassed in an inmate's right of access to the courts and what constitutes standing to bring a claim for the violation of that right. First, the Court held that to show a violation of his right of access to the courts, an inmate must allege an actual injury. *Id. at 349.* The fact that an inmate may not be able to litigate effectively once his claim is brought before the court, is insufficient to demonstrate actual injury. *Id. at 355.* Rather, the inmate must show that he was unable to file the initial complaint or petition, or that the complaint he filed was so technically deficient that it was dismissed without a consideration of the merits of the claim. *Id. at 351.* In addition, the Court observed that "the injury requirement is not satisfied [*9] by just any type of frustrated legal claim." *Id. at 354.* The Court stated that:

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating machines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that an inmate need in order to attack their sentences, directly or collaterally, and in order to challenge their conditions of confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id. at 355.*

Here, the plaintiff alleges that on August 7, 1997, the defendants failed to provide him with his legal materials. He claims that a civil rights action that he filed in this court was dismissed because of the defendants' actions. In his memorandum in response to the present motion for summary judgment, the plaintiff attaches a ruling dismissing the complaint filed in Hanton v. Armstrong, Case No. 3:97cv660 (JBA). The ruling, which is file-stamped July 17, 1997, permits the plaintiff thirty days to file an amended [*10] complaint to correct any deficiencies in the original complaint. The plaintiff also attaches a judgment entered in the case on September 12, 1997. In addition, the plaintiff attaches an inmate request form indicating that Counselor Patterson returned plaintiff's legal materials to him in the restrictive housing unit on August 18, 1997. In support of their motion for summary judgment, the defendants have submitted the affidavit of Counselor Patterson. In his affidavit, Counselor Patterson states that the plaintiff was confined in the infirmary on August 7, 1997 and was not permitted to return to his cell to retrieve his legal work. Counselor Patterson states that he retrieved a box of what appeared to be legal documents from the plaintiff's property and delivered the documents to the plaintiff at approximately 3:00 p.m. that same day. The facts in Counselor Patterson's affidavit are included in the defendants' Local 9(c)1 Statement and have been deemed admitted because the plaintiff failed to file a Local 9(c)2 Statement in response. Thus, the plaintiff has not demonstrated that his legal materials were not delivered to him on August 7, 1997.

Furthermore, the plaintiff's allegation [*11] that his case was dismissed as a result of the alleged denial of access to his legal materials on August 7, 1997, is without merit. First, the plaintiff's lawsuit was dismissed with leave to file an amended complaint on July 17, 1997, three weeks prior to his confinement in the infirmary on August 7, 1997. Second, the plaintiff's case was still pending on August 18, 1997, when he concedes that he received his legal materials. The judgment closing the plaintiff's case was not entered until September 12, 1997. The plaintiff has not demonstrated that the defendants prevented him from filing an amended complaint in the action prior to September 12, 1997, or that he was unable to file a motion for extension of time to file the amended complaint. In addition, there is no evidence that the plaintiff could not have filed a motion to vacate the judgment entered on September 4, 1997. Thus, the plaintiff has not shown that he suffered an actual injury as a result or the defendants alleged failure to provide him with his legal materials between August 7 and August 18, 1997. Because the plaintiff has not met the actual injury requirement set forth in Lewis, the plaintiff's access to courts [*12] claim fails.

Accordingly, the defendants are entitled to summary judgment on this ground.

## II. Eighth Amendment Claim

The plaintiff alleges that was subjected to cruel and unusual punishment when defendants Mathiau and Campbell placed him in a cell at the prison infirmary against his will. The defendants contend that the plaintiff has failed to state a claim for a violation of his Eighth Amendment rights.

The Supreme Court has defined the contours of the Eighth Amendment protection against cruel and unusual punishment, made applicable to the states by the Fourteenth Amendment, as follows: "The Eighth Amendment's bar on inflicting cruel and unusual punishments . . . 'proscribe[s] more than physically barbarous punishments.' It prohibits penalties that are grossly disproportionate to the offense as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Hutto v. Finney, 437 U.S. 678, 685, 57 L. Ed. 2d 522, 98 S. Ct. 2565 (1978)* (citations omitted). See also *Rhodes v. Chapman, 452 U.S. 337, 347, 69 L. Ed. 2d 59, 101 S. Ct. 2392 (1981)*. There is no static test for determining [*13] whether conditions of confinement are cruel and unusual. See *Rhodes, 452 U.S. at 346.* The Eighth Amendment must "draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Id. The Second Circuit, in addressing the needs protected by the Eighth Amendment, stated that sentenced prisoners are entitled only to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978),* rev'd on other grounds, *Bell v. Wolfish, 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979); Lareau v. Manson, 651 F.2d 96, 106 (2d Cir. 1981).* "To the extent that such conditions are restrictive even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes, 452 U.S. at 347.* Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests [*14] or safety." *Whitley v. Albers, 475 U.S. 312, 319, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986).*

In this case, the plaintiff alleges only that he was required to stay in a cell in the prison infirmary on August 7, 1997. He provides no evidence that the defendants denied him "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish, 573 F.2d at 125.* In fact, the defendants have filed the affidavit of Dr. Edward Blanchette which indicates that the plaintiff was placed in the infirmary on August 7, 1997 for continuous observation and evaluation of the his medical complaints of memory loss and changes in his mental status. The plaintiff has not alleged that the defendants acted with deliberate indifference to his health and safety or deprived him of the minimum civilized level of life's necessities when they placed him in the room in the prison infirmary on August 7, 1997. Thus, the court concludes that the plaintiff fails to state a claim for the violation of his rights under the Eighth Amendment. The defendants' motion for summary judgment is granted as to the plaintiff's Eighth Amendment claim.

## III. Denial of Opportunity [*15] to Practice Religion

The plaintiff alleges that defendants Cleaver and Allen denied him the opportunity to attend Islamic services in August and October 1997. The defendants contend that the plaintiff has failed to exhaust his administrative remedies with respect to these claims.

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, *42 U.S.C. § 1997e(a)*, requires an inmate to exhaust "administrative remedies as are available" before bringing a section 1983 "action . . . with respect to prison conditions." The term "action . . . with respect to prison conditions" is not defined in section 1997e. The Second Circuit has stated that "the use of the term 'prison conditions' in § 1997e(a) would appear to refer to 'circumstances affecting everyone in the area affected by them,' rather than 'single or momentary matter[s],' such as beatings or assaults, that are directed at particular individuals." *Nussle v. Willette, 224 F.3d 95, No. 99-0367, 2000 WL 1199957,* at *5 (2d Cir. Aug. 24, 2000). The Second Circuit held that the exhaustion requirement of section 1997e(a) does not apply to claims of assault or excessive force. See Id. [*16] at *11.

Here, the defendants argue that the plaintiff has not exhausted his administrative remedies with respect to his claims of denial of access to Islamic religious services. The Court concludes that claims involving an inmate's attendance or participation in religious services are "circumstances affecting everyone" rather than an isolated occurrence such as the use of excessive force by a correctional official. Thus, the Court concludes that the exhaustion requirement is applicable in this case.

In response to the defendants' motion, the plaintiff provides evidence that he exhausted his claim that on August 7, 1997, Lieutenant Allen denied his request to attend Islamic services. In addition, he has provided evidence that he exhausted his remedies under the Department of Correction grievance procedure with respect to claims that he was not permitted to attend

Islamic services on two days during October 1997. On October 11, 1997, the plaintiff filed a grievance stating that on October 10, 1997, Captain Cleaver refused to allow him to attend Jumu'ah services and that on October 11, 1997, Correctional Officer Wells denied his request to attend Taleem services. The plaintiff appealed [*17] the denial of those grievances on December 2, 1997. The plaintiff also submitted evidence that he had made some attempt to informally resolve his claims concerning his inability to attend religious services on October 10 and 11, 1997.

The plaintiff has not, however, provided any evidence that he filed any institutional grievances with regard to any other dates in the three week period in October 1997 during which the plaintiff claims he was deprived of the opportunity to attend Islamic services. Accordingly, the defendants' motion for summary judgment is granted as to the plaintiff's claims that the defendants refused to permit him to attend Islamic services on October 9, 1997 and October 12 through October 30, 1997. n3

n3 The court notes that one of the grievances submitted by the plaintiff also contains a claim that Nurse Wollenhaupt deprived him of the opportunity to participate in Jumu'ah services on August 8, 1997. There are no allegations in the complaint concerning August 8, 1997. The plaintiff cannot amend his complaint through a memorandum of law in opposition to a motion for summary Judgment. See *Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996)* ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (citing *Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984),* cert. denied, *470 U.S. 1054, 84 L. Ed. 2d 821, 105 S. Ct. 1758 (1985)); Natale v. Town of Darien, 1998 U.S. Dist. LEXIS 2356,* No. CIV. 3:97 CV583 (AHN), *1998 WL 91073,* at *4 n. 2 (D. Conn. Feb. 26, 1998) (holding plaintiff may not amend complaint in memorandum of law) (citing *Daury v. Smith, 842 F.2d 9, 15-16 (1st Cir. 1988)); Hartford Fire Ins, Co. v. Federated Dep't Stores, Inc., 723 F. Supp. 976, 987 (S.D.N.Y. 1989)* (same). Thus, this claim is not before the court.

[*18]

B. Personal Involvement

As stated above, the plaintiff has exhausted his administrative remedies with respect to his claim that he was not permitted to attend Islamic services on October 11, 1997. The court notes, however, that in the grievance relating to this claim, the plaintiff stated that Officer Wells refused to allow him to go to Taleem services on October 11, 1997. Officer Wells is not a defendant in this action.

It is settled law in this circuit that in a civil rights action for monetary damages against a defendant in his individual capacity, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation. See *Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).* The doctrine of respondeat superior is not applicable in section 1983 cases. See *Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 692-95, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).*

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after [*19] being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)* (internal quotation marks and citations omitted). The plaintiff must "allege a tangible connection between the acts of the defendants and the injuries suffered." *Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).*

Here, the plaintiff seeks monetary damages from the defendants in their individual capacities only. The plaintiff has failed to provide evidence, however, that any of the individuals named as defendants in this action were involved in the decision not to allow him to participate in religious services on October 11, 1997. Accordingly, the plaintiff's claim that the defendants refused to [*20] permit him to attend Taleem services on October 11, 1997 is dismissed for lack of personal involvement. See *28 U.S.C. § 1915* (e)(2)(B)(ii) (court may dismiss at any time claims which fail to state a claim upon which relief may be granted).

C. August 7, 1997 and October 10, 1997 Claims

The defendants argue that even if the plaintiff had exhausted his administrative remedies, denial of religious services on one or two occasions is not sufficient to state a claim for denial of the right to exercise one's religion. The plaintiff does not address this argument.

"Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish, 441 U.S. 520, 545, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979)*. The protections afforded by the First Amendment, including the ban against laws that prohibit the exercise of religious freedom, are retained by prisoners. See *O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 96 L. Ed. 2d 282, 107 S. Ct. 2400 (1986)* (citing *Pell v. Procunier, 417 U.S. 817, 822, 41 L. Ed. 2d 495, 94 S. Ct. 2800 (1974); Cruz v. Beto, 405 U.S. 319, 31 L. Ed. 2d 263, 92 S. Ct. 1079 (1972)* [*21] (per curiam)). "Prisoners must be provided 'reasonable opportunities' to exercise their religious freedom . . . ." *Hudson v. Palmer, 468 U.S. 517, 523, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984)* (quoting *Cruz, 405 U.S. at 322 n.2)*. Prison officials may impose "restrictions on prisoners' religious practices only when such restrictions serve an important governmental objective and 'the restraint on religious liberty is reasonably adapted to achieving that objective.'" *Moorish Science Temple of America, Inc. v. Smith, 693 F.2d 987, 990 (2d Cir. 1982)* (quoting *LaReau v. MacDougall, 473 F.2d 974, 979 (2d Cir. 1972)*, cert. denied, *414 U.S. 878, 38 L. Ed. 2d 123, 94 S. Ct. 49 (1973))*.

In the present case, the plaintiff does not allege the existence of a prison regulation that interferes with his exercise of religious freedom. He merely alleges that he was unable to attend Islamic services on two days in a three month period. The plaintiff submits evidence indicating that on August 7, 2997, Lieutenant Allen denied him the opportunity to attend Islamic Taleem services. (See Pl.'s Opp. to M. Summ. J. [*22] Ex. F.) The plaintiff also provides evidence that on October 10, 1997, Captain Cleaver deprived him of the opportunity to attend Jumu'ah services. (See Pl.'s Opp. to M. Summ. J. Ex. H.)

In *Green v. McKaskle, 788 F.2d 1116 (5th Cir. 1986)*, the court upheld an arrangement by the warden that permitted an inmate to attend religious services on most Sundays as providing the inmate a reasonable opportunity to practice his religion. *Id. at 1126*. The court found no constitutional violation even though the inmate wished to attend additional services each Sunday and at least one service every Sunday. Id. Here, the plaintiff was not permitted to attend religious services on one day in August and one day in October. Like the inmate in Green, the plaintiff has been afforded a reasonable opportunity to practice his religion. In addition, the plaintiff does not allege that on either day he was prevented from worshiping privately in his cell or participating in other religious ceremonies, prayer or discussion. See *Canell v. Lightner, 143 F.3d 1210, 1214 (9th Cir. 1998)* ("relatively short-term and sporadic" interference with ability to [*23] pray not substantial burden on religious exercise); *Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir.) (per curiam)* (denial of congregate religious services for troublesome inmate allowed because solitary practice of religion permitted), cert. denied, *510 U.S. 902, 126 L. Ed. 2d 229, 114 S. Ct. 278 (1993); Brown v. Day, 1999 U.S. Dist. LEXIS 15970, No. Civ.A. 99-2436, 1999 WL 816378*, at *8 (E.D. La. Oct. 7, 1999) (inmate's inability to attend formal weekly church services for 84 day period did not "constitute a substantial burden on his free exercise of his religion" because he was able to read his Bible and pray during that period); *Houlihan v. Moyihan, 1989 U.S. Dist. LEXIS 7768, No. 87 C 3779, 1989 WL 75459* at, *2 (N.D. Ill. June 27, 1989)* ("A prisoner who occasionally is kept from attending church is not denied a reasonable opportunity to practice his religion so long as he is accorded regular access to religious services."). The court concludes that the plaintiff was not deprived of reasonable opportunities to exercise his religious freedom by being unable to attend congregate services on two days during a three month period in 1997 and that the defendants did not violate [*24] his First Amendment right to practice his religion. Thus, the defendants' motion for summary judgment is granted as to this claim.

Conclusion

Defendants' Motion for Summary Judgment [Doc. # 33] is GRANTED. The claim concerning plaintiff's inability to attend Taleem services on October 11, 1997 is dismissed. See *28 U.S.C. § 1915(e)(2)(B)(11)*. This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge with appeal to the Court of Appeals. (See Doc. # 12.) The Clerk is directed to close this case.

SO ORDERED.

Entered this 19 day of September, 2000, at Bridgeport, Connecticut.

Holly B. Fitzsimmons

United States Magistrate Judge

JUDGMENT

This cause came on for consideration on the defendants' motion for summary judgment before the Honorable Holly B. Fitzsimmons, United States Magistrate Judge.

2000 U.S. Dist. LEXIS 21857, *

The Court has considered the motion and all the related papers. On September 20, 2000, the Court filed its Ruling granting the defendants' Motion for Summary Judgment and dismissing the plaintiff's claim concerning his inability to attend Taleem services on October 11, 1997 pursuant to *28 U.S.C. § 1915* **[*25]** (e)(2)(B)(ii).

Therefore it is **ORDERED** and **ADJUDGED** that judgment is entered in favor of the defendants and the case is closed.

Dated at Bridgeport, Connecticut this 22nd day of September, 2000.

Entered on Docket 9/22/00